By the Court :
The question presented for decision in this case is, has the proprietor of lands, bounded on a navigable stream, a separate and individual interest or property in any portion of the bed of the river?
The cession of the United States of the lands within the territory of which Ohio is now a part, was made subject to no condition with respect to navigable streams. But in the first frame of government, commonly called the ordinance, which is fundamental in its character, it is stipulated that “ navigable waters leading into the Mississippi and St. Lawrence, shall be common highways, and be forever free” to all the people of the United States. The legislation of Congress, for the disjDosition of the lands, has strictly conformed to this stipulation. The lands within the beds of navigable rivers have not been sold to individuals as land to be paid for. And whether the rivers have or have not been made boundaries of surveys, the land usually covered by water has been deducted from that upon which the purchase money was charged. This, it is argued, is a fact conclusive to establish the position that the individual purchaser acquires no right to the bed of the river .adjoining his lands. But we do not think it properly attended with such consequence.
It is, we conceive, vitally essential to the public peace and to individual security, that there should be distinct and acknowledged legal owners lor both the land and water of the country. This seems to have been the principle upon which the common law doctrine was originally settled, that where a stream was not subject to the ebb and flow of the tide it should be deemed the property of the owners of the soil ^bounding upon its banks. The reason upon which this rule is founded, applies as strongly in this country as in any other. And no maxim of jurisprudence is of more universal application than that where the reason is the same the law should be the same.
If, in the case before us, the owners of the lands bounded on the banks of the Sandusky river, do not own the fee simple in that stream, subject only to the use of the public, who does own it, and *467 what is its condition ? The ordinance reserves nothing but the use. No act of Congress makes any reservation in relation to the beds of rivers. We find no provisions ¡but those of section 9 of the act of 1796, which are confined to reserving the use of navigable rivers, and to declaring the existence of the common law doctrine, in respect to streams not navigable.
A river consists of water, bed, and banks. At what point does the right of the owner of the adjoining lands terminate? On the top, or at the bottom of the bank ? At high or at low-water mark ? Does his boundary recede and advance with the water, or is it stationary at some point? And where is that point? Who gains by alluvion, who loses by the direptions of the streams ? No satisfactory rules can be laid down, in answer to these questions, if the common law doctrine be departed from; and if it be assumed, that the United States retain the fee simple in the beds of our rivers, who is to preserve them from individual trespasses, or determine matters of wrong between the trespassers themselves? It can not be reasonably doubted, that, if all the beds of our rivers supposed to be navigable; and treated as such by the United States, in selling the lands, are to be regarded as unappropriated territory, a door is opened for incalculable mischiefs. Intruders upon the common waste would fall into endless broils among themselves, and involve the owners of the adjacent lands in controversies innumerable. Stones, soil, gravel, the right to fish, would all be subjects for individual scramble, necessarily leading to violence and outrage. The United Slates would be little interested in preserving either the peace or the property, and, indeed. would be powerless to do it, without an interference with the policy of the state, as unsuitable for the Union to exercise, as it would be inconvenient, -if not dangerous, to state sovereignty.
*We do not believe that it was the intention of the United States to reserve an interest in the bed, banks, or water of the rivers in the state, other than the use for navigation to the public, which is distinctly in the nature of an easement, and all grants of land upon such waters, we hold to have been made subject to the rule of the common law, which, in this case, is the plain rule of common sense. And it is this: He who owns the lands upon both banks, owns the entire -river,- subject only to the easement of navigation, and he who owns the land upon one.bank-only, owns to the middle of the river, subject to the same easement. This is *468 the rule, recognized not only in England, but in our sister states. 20 Johns. 90; 17 Johns. 195; 3 Caine, 319; 2 Conn. 481. The case in 20 Johnson is full and clear in point. There is nothing in the trust vested in Congress, and executed by them, and nothing in the manner of executing it, to warrant the establishment of a different principle here. The charge of the court of common, pleas was, in our opinion, erroneous ; the judgment must, therefore, be reversed, and a venire de novo awarded.