## RIPARIAN OWNERSHIP.

[Circuit Court of Lucas County.]

ABRAM M. CHESBROUGH v. ANNIE M. HEAD.*

Decided, February 14, 1902.

*Riparian Rights—Are Conveyed to Abutting Purchaser—Without Being Included in Boundary Lines—Meander Line Not a Boundary Line.*

1. Unless excluded by apt and proper words, riparian rights pass to a purchaser of land abutting upon a navigable stream, or of a platted lot so abutting, without measurement of the bed of the stream and without payment for the land so included, except as it is covered by the purchase price of the land on shore.

2. A meander line bordering upon a navigable stream does not make a boundary, but is run for the purpose of determining the quantity of the land.

HULL, J.; HAYNES, J., and PARKER, J., concur.

Heard on appeal.

This case was tried in this court on appeal from the common pleas court and is an action to quiet title; the plaintiff claiming to be the owner and in actual possession of "All that part of the bed of the Maumee river lying between the surveyed portion of lots thirteen (13), fourteen (14), fifteen (15), and sixteen (16), of Ironville, on the southeast and the center of the channel of the Maumee river on the northwest, and being a part of the Wasayon tract, in town nine (9) south, range eight (8) east, Michigan meridian in Lucas county, Ohio." As appears from this description, the land in question is a portion of the bed of the Maumee rver, and the whole of it is usually covered by water and lies opposite the surveyed portions of the lots mentioned.

The question in the case is, whether the deed which conveyed to the plaintiff said lots 13, 14, 15 and 16 of Ironville, conveyed with it the right and title to the land under the water, subject to the public right of navigation, or whether the deed only conveyed the surveyed portions of those lots as described and in-

*Affirmed by the Supreme Court without report, October 20, 1903.

dicated by the lines on the plat of the village of Ironville, which plat was made and recorded by the proprietor, David Weaver, in January, 1870.

Weaver mortgaged these lots to Valentine Ketcham; they were sold on foreclosure and bid in by Mr. Ketcham, and he afterwards made a conveyance to plaintiff of those lots, describing them by numbers, according to the plat. This occurred during the lifetime of Weaver. Subsequent to this deed by Ketcham to Chesbrough, Weaver made a deed of the bed of the river, opposite these lots, to the defendant. After Weaver's death his heirs made a deed to the plaintiff of this property; but that was subsequent to this deed, so that, after all, it comes back to the question of whether by the deed from Ketcham to plaintiff of these lots, by number, the title to this land under the water, so far as it is susceptible of private ownership, was conveyed to the plaintiff; whether the whole riparian rights appurtenant to and incident to the land bounding and abutting upon the river at the foot of these lots was conveyed by that deed, or not.

A case involving a similar question, *Annie M. Head* v. *Abram Chesbrough,* the same parties, some years ago went to the Supreme Court from this county. The land in that case was that lying in front of the surveyed portions of lots 11 and 12, immediately adjoining the lots in question here. That case was decided in favor of Chesbrough in the circuit court and affirmed by the Supreme Court without report. The case below was fully reported and the decision of Judge Pugsley of the common pleas court is found in *Head* v. *Chesbrough,* 4 N. P., 73, and the decision of the circuit court in *Head* v. *Chesbrough,* 13 C. C., 354. It is claimed that the facts in this case are somewhat different from those in that case.

The principle of law that a conveyance of lots bounding and abutting upon a navigable stream carries with it the riparian rights and the title to the land under the water, unless there are express words in the conveyance excluding from the conveyance such rights, seems to be well established by all the authorities in this state. It is not my purpose in this opinion

to review these authorities at great length. They were fully discussed in the other case, in the briefs of counsel and in the opinion of Judge Pugsley. The case where this doctrine was first clearly announced in this state is that of *Gavit* v. *Chambers*, 3 Ohio, 495, 496, where the syllabus says:

"In Ohio, owners of lands situate on the banks of navigable streams running through the state, are also owners of the beds of the rivers to the middle of the stream, as at common law."

This was a case that went up from Sandusky county and involved the rights of abutting owners in the land under the waters of Sandusky river. The court say, at page 498 of the opinion:

"We do not believe that it was the intention of the United States to reserve an interest in the bed, banks or water of the rivers in the state, other than the use for navigation to the public, which is distinctly in the nature of an easement, and all grants of land upon such waters we hold to have been made subject to the rule of the common law, which, in this case, is the plain rule of common sense. And it is this: He who owns the lands upon both banks owns the entire river, subject only to the easement of navigation, and he who owns the land upon one bank only, owns to the middle of the river, subject to the same easement. This is the rule recognized not only in England, but in our sister states."

This case has never been overruled or criticized, but has been cited with approval by the Supreme Court in two or three subsequent decisions.

*Day* v. *Railroad Co.*, 44 Ohio St., 406, is in point and cites with approval the case of *Gavit* v. *Chambers, supra.* The first paragraph of the syllabus is:

"A general deed of premises lying upon the bank of a river, in which is constructed a canal, conveys the grantor's rights to the center of the stream bounding the property. And to reserve or exclude from the grant any such rights, the conveyance should contain proper words of such reservation or exclusion."

On pages 419 and 420 of the opinion several of the Ohio cases are considered and quoted from, and among them *Gavit* v.

*Chambers, supra,* and quoting from *Lamb* v. *Rickets,* 11 Ohio, 311, as follows:

"Where the owner of land is bounded by a stream, he owns to the center of the stream, subject to the easement of navigation."

In the comparatively recent case of *Railroad Co.* v. *Platt,* 53 Ohio St., 254, this question was considered by the Supreme Court. The facts in that case were somewhat different from the case here, that being an action in ejectment. The law, as laid down by the syllabus of the case, is this:

"A conveyance of lands situated upon a navigable stream, the description being by courses and distances from a fixed monument and establishing a boundary line coincident with the line of navigation, conveys the grantor's title as far as the central thread of the stream."

And on page 266 of the opinion, the court, through Judge Shauck, say:

"These considerations would seem to justify the presumption that a grant of this character is to the central thread of the stream unless apt terms are employed to limit it."

And such appears to be the settled view of the courts of the country.

"To the application of this doctrine it is quite immaterial whether the stream be named as a boundary of the lands granted or there be a description by courses and distances from a fixed monument whereby a line is established coincident with the stream. The doctrine regards the substance of the grant and not its form."

Counsel for defendant cites as an authority in this case and rely upon *Lembeck* v. *Nye,* 47 Ohio St., 336. In our judgment, however, this case is not applicable to the case at bar. The water in question in that case was the water of a small non-navigable lake in Medina county, and the rule as to such waters is different from that in the case of a navigable stream like the Maumee river. The first paragraph of the syllabus in that case is as follows:

"A non-navigable inland lake is the subject of private ownership; and where it is so owned, neither the public, nor an owner of adjacent lands, whose title extends only to the margin thereof, have a right to boat upon or take fish from its waters."

Judge Bradbury delivered the opinion, and discusses the difficulty of applying the rule relating to navigable streams to such a body of water as a small inland lake.

Judge Shauck, in *Railroad Co.* v. *Platt,* 53 Ohio St., 254, at page 268 of the opinion, refers to the case of *Lembeck* v. *Nye, supra,* as follows:

"The views expressed in *Lembeck* v. *Nye,* 47 Ohio St., 336, were not intended to have, and can not have, any application to a case of this character. The lands there in controversy lay under water that was not navigable. By the clear terms of the syllabus the case was limited to lands thus situated; and in the principal opinion prominence is given to the consideration that the lake there in controversy was susceptible of private ownership, and the views here expressed were recognized as controlling in cases of navigable streams."

So that it appears both from the syllabus of *Lembeck* v. *Nye, supra,* and from the expression of Judge Shauck in *Railroad Co.* v. *Platt, supra,* that the law as laid down in *Lembeck* v. *Nye, supra,* was limited and intended to be limited to lands bounding upon non-navigable inland lakes.

The plat in this case shows a line not exactly coincident with the water line of the river as shown upon the plat, the surveyor running the line near the water line, according to the evidence from three to five feet from the water line at the time the survey was made, this line running from corner to corner of the lots practically, but not exactly, the line angling with the curves of the river and not following the sinuous line of the water itself, or the "sinuosities of the river," as some authorities express it, but turning at angles to correspond as near as possible to the curves of the river and so as to leave a strip of from three to five feet between the line and the water line of the river. The lots were sold by numbers according to the plat, and it is argued by defendant that no more land would be conveyed than that contained within the line of the lots as shown by the plat and

that the title conveyed, therefore, would stop with the lines run by the surveyor a short distance from the water line.

We find, however, from the evidence, that this line shown upon the plat near the water line was not intended as a boundary line of the lots, but what is known as a meandering line run by the surveyor, as near as practicable or convenient coincident with the water line, and that it is not to be regarded as the bounding line of the lots; that the lots were intended to be and in fact do bound and abut upon the Maumee river.

As to the effect of this meandering line, *June* v. *Purcell,* 36 Ohio St., 396, is in point, where the court say, on page 407:

"That the meander lines run in surveying portions of the public lands bordering upon navigable rivers, are run, not as boundaries of the tract, but as a means of ascertaining the quantity of land to be paid for by the purchaser, was decided in *Railroad Co.* v. *Schurmier, supra.* The meander line, therefore, in the present instance, not being a boundary line, the only boundary line was the river; and the question is, when the boundary line of a riparian owner is thus described, where is it to be located? *Gavit* v. *Chambers* answers at the middle of the stream, as at common law."

This case is also a Sandusky county case, and the river was the Sandusky river. The case cited there is a decision of the Supreme Court of the United States found in *Railroad Co.* v. *Schurmier,* 74 U. S., 272; the court say, in the first paragraph of the syllabus:

"The meander lines run in surveying fractional portions of the public lands bordering upon navigable rivers, are run, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction, and which is to be paid for by the purchaser."

The amount of land in each one of these lots was ascertained by the surveyor, and that is indicated and marked upon the plat, and the meandering line, in our judgment, was intended to mark what was to be included in the measurement of the lot. The land under the water of a navigable stream is not included in the measurement of the abutting lot, but title to it passes to the center of the stream with the conveyance of the lot, and it is

not necessary to include it in the measurement. Unless excluded by apt and proper words, the riparian rights will pass without any measurement of the bed of the stream and without any payment for it by the acre or otherwise, except as it is included in the price paid for the land on the shore.

It appears from this plat, and it is one of the agreed facts in the case, that by the making of it and the recording of it, a street, called Lee street, was dedicated, and, according to the plat, the side lines of the street run down to the river between lot No. 12 and lot No. 13 of this tract of land, and this inner line of the surveyor runs across the street as well as across the lots, and the strip of land left there is as wide, apparently, as that across any one of the lots.

We think it very clear that Mr. Weaver did not intend to stop this street by the line inside of the water line of the river; it clearly was his intention to run this street to the river, and the surveyor did not intend, by running this line across the street, to reserve in Weaver a strip of land three or four feet in width across the street and separate it from the water of the river; the same line is run across the government lighthouse reservation in lots 200 and 201; where there is no such line, the acreage of the lots is not given upon this plat.

We therefore hold that it was the intention of Mr. Weaver to bound and abut these lots upon the river, and that they do in fact bound and abut upon the river and are to be so regarded, and the rights of these parties are to be determined according to that, and that being our holding, the rights of the parties are clearly and fully established by the law of the land. The deed from Mr. Ketcham to the plaintiff conveyed the whole of these lots, which we hold abutted upon the river, and there being in the deed no exclusion, no reservation of riparian rights, they were carried by that conveyance to the plaintiff.

This rule applies where the lots are conveyed by number as well as where they are conveyed by metes and bounds. This is so held in *Watson* v. *Peters*, 26 Mich., 508. The opinion in the case is by Judge Cooley, and the court say in the syllabus:

"The grant of a city lot bounded on a navigable stream, with the water as a boundary, in the absence of any express reserva-

tion, conveys to the grantee the land under the water to the center of the stream; and the fact that the grantor before conveying, platted the lands into lots and blocks, with distinct lines and distances marking the boundaries of each lot, and with the water boundary of the river lots indicated by a line representing the shore line, and conveyed by such plat, will not limit the grant to such shore line, or operate to reserve to him proprietary rights in front of the lots conveyed.

"The privileges and conveniences which appertain to the shore of navigable streams constitute a part, and often the principal part, of the value of the grant, and this is especially true of city lots, and therefore the reason of the rule which infers the intent to convey the land under the water is, in the case of such lots, most apparent and forcible."

We are unable to see any appreciable or material difference between the facts of this case and those of the former case of *Head* v. *Chesbrough, supra,* which went to the Supreme Court. There is this difference pointed out, as shown by the finding of facts in the other case: Upon the three adjoining lots in that case docks had been built and extended out into the river, and the court also found in that case that the purchase price was so great that it would be presumed that the purchaser supposed he was acquiring with the main land the riparian rights and the right to the land under the water of the river. The briefs of counsel, however, which were filed in the Supreme Court, did not discuss this, but the case was presented to the court upon the general principles of law affecting and controlling the rights of the owners of lands bounding and abutting upon a navigable stream, and authorities along that line were cited by counsel at considerable length upon both sides, and the case was affirmed without report.

These two considerations referred to are mentioned in the opinion delivered by Judge King in the circuit court in *Head* v. *Chesbrough, supra,* but the syllabus of the case bases the decision upon the general principles of law, and is as follows:

"Conveyance of platted lots which are situated upon the banks of a navigable stream, no part of the bed of the stream being platted, includes all the riparian rights of the grantor in front of said lots to the center of the stream, although such stream is

not mentioned in the conveyance.  To exclude such rights they should be reserved or excepted in the deed.''

And on page 357, Judge King, in rendering the opinion, says:

''We think the law is well settled that when one party conveys land adjoining a navigable river of the state of Ohio, and the land in fact abounds and abuts upon the water which flows in front of the premises, and conveys by a conveyance which does not except or reserve the land in front of the premises, although they may be marked with boundary lines, that the grantee takes to the center of the navigable stream—to the center of the current.''

The two lots involved in that case are shown upon the same plat and adjoin the lots in question here, and the line run by the surveyor at the end of the lot toward the river, or the end abutting upon the river, appears in front of the two lots in the former case as well as in this case, and we think the questions in that case, as decided by the common pleas and circuit courts and by the Supreme Court, are substantially the same as those involved here.

The decision of Judge Pugsley of the common pleas court in the former case is found in *Head* v. *Chesbrough,* 4 N. P., 73, and contains a full discussion of the rights of riparian owners, citing authorities at length and considering them, and the question is discussed by the judge along general lines and the general principles controlling the rights of the owners of riparian lands are stated, and there is no discussion of and no attention is paid to these two points—the price which was given for the land and the fact that there was a dock upon the adjoining lots projecting into the river.  The syllabus of that case states the law as we understand and hold it to be:

''A conveyance of platted lots which are situated upon the bank of a navigable stream, no part of the bed of the stream being platted, includes all the riparian rights of the grantor in front of said lots to the center of the stream, although such stream is not mentioned in the conveyance.  To exclude such rights they should be reserved or excepted in the deed.''

Judge King, in delivering the opinion in the circuit court, did not undertake to review the authorities, but they are fully

reviewed in Judge Pugsley's opinion and the decision covers the ground and we cite it as an authority in this case.

The decree, therefore, wlll be for the plaintiff, quieting his title to this property.

*C. W. Everett,* for plaintiff.

*King & Tracey,* for defendant.