THE STATE, EX REL. THE ANDERSONS, A LIMITED PARTNERSHIP, *v.* PRESTON, DIR. OF HIGHWAYS.

(No. 7072—Decided October 1, 1963.)

*Messrs. Marshall, Melhorn, Bloch & Belt, Mr. John B. Spitzer, Messrs. Knepper, White, Richards, Miller & Roberts,* and *Mr. Hugh A. Sherer,* for relator.

*Mr. William B. Saxbe,* attorney general, *Mr. Harry R. Paulino,* and *Mr. Joseph D. Bryan,* for respondent.

Duffey, J. This is an original action in mandamus seeking to require the Director of Highways to commence appropriation proceedings. The underlying theory of relator's action rests on an alleged substantial or material interference with an incorporeal right appurtenant to ownership of riparian land. The case is before the court on a motion for summary judgment.

Relator operates grain elevators and a marine terminal. The terminal is located on eight acres of river tract on the Maumee River in Lucas County. The Maumee is a navigable river leading to the bay and Lake Erie. The tract was leased by relator in 1937 and purchased in 1950. The main shipping channel of the river is more than a mile downstream from the tract. Upon leasing the property, relator applied for and obtained a federal permit to dredge a channel some 6,000 feet long and 100 feet wide from the main channel to his tract. There is no allegation or testimony that relator obtained any easement or right from the other abutting riparian owners to dredge this channel.

The state of Ohio determined to relocate U. S. Route No. 25, under the Federal Interstate Program (Sections 101 to 132, Title 23, U. S. Code). The relocation includes a bridge across the river. The bridge is above the main channel, but approximately a mile or some 5,000 feet downstream from the relator's tract. It cuts perpendicularly across the smaller channel. It is a fixed-span bridge with a clearance of 45 feet above water level. This clearance is insufficient for all or at least a substantial number of the ships which previously used that channel.

On January 10, 1958, the United States Corps of Engineers and the United States Secretary of the Army issued a permit to the city of Toledo for this bridge. The petition, the deposition filed with the motion, and the relator's briefs devote much space to the events leading up to the issuance of the permit. In essence, these are that (1) the City Manager and others induced

relator to withdraw opposition to a fixed-span bridge by promises of aid or compensation in relocating downstream, and (2) the Corps of Engineers approved the bridge permit on the factual premise that relator's interests were protected. Assuming these to be true, they have no conceivable bearing upon the legal issue of the nature and scope of relator's private riparian rights or upon the issue of any constitutional obligation to appropriate such rights. Such facts might give rise to an action against the state or the city, or relator might address an application for relief to the appropriate federal officials. However, we do not see that these events have any place in this mandamus action. There is, therefore, no point in reviewing the history of the issuance of the federal permit.

It is obvious that if relator has no legal right such as it claims, then it is unnecessary to consider whether the alleged interference is or is not substantial and material. It became apparent in the course of the proceedings in this action that the parties' positions would involve serious evidentiary controversy, i. e., respondent has indicated its position that for reasons unrelated to this bridge, these ships had or would have ceased use of the channel in any event. There also appears to be dispute as to tonnage, structure of vessels, and their maneuverability up both the main and subsidiary channels, etc. Legal issues arise with respect to the issuance of the federal permit and other matters. At the court's suggestion and to enable a decision on the nature of relator's legal rights, the parties have submitted the motion for summary judgment based on the pleadings and the deposition of Harold Anderson. However, the state reserved the right to submit opposing affidavits to prove the existence of genuine issues of fact in the event that our ruling was in favor of relator. Accordingly, in stating the facts, this decision assumes matters in favor of the relator that respondent has conceded only for the motion and might wish to contest if a trial were required.

In the petition, relator alleges that the bridge has impaired (1) the navigability of the so-called "private" channel; (2) relator's "established riparian rights"; and (3) the usefulness of the premises as a marine terminal.

To narrow and clarify the discussion, it seems best to start with what this case does *not* involve. As noted, the bridge is

several thousands of feet downstream from relator's tract. Thus, there is no physical taking of any part of the tract itself. The alleged fact of the impaired usefulness of the terminal is thus irrelevant unless relator has some other property right affected by the construction of the bridge. If such a right exists, then the effect upon the terminal may become pertinent in determining whether the interference is substantial enough to constitute a taking.

As an abutting owner on a navigable stream, relator holds, in addition to the land, a title to the middle of the bed of the stream adjacent to his property. *Administrators of Gavit* v. *Chambers and Coats* (1828), 3 Ohio 495, and see cases cited in 55 Ohio Jurisprudence 2d 253, Waters and Watercourses, Section 87, Note 9. However, no bridge abutment or other obstruction (or improvement) has been placed on the subaqueous land owned by relator. Thus, there is no "taking" of any private interest of relator in the stream bed.

Accordingly, two of relator's alleged grounds for this action are without merit. The case revolves around the third ground, an alleged interference with riparian rights. It is to this claim that relator has devoted his brief. Again, in order to clarify and narrow the issues, it is necessary to note what riparian rights are *not* involved.

Relator holds a riparian right to build landfills, wharves, piers, and other structures in aid of navigation, subject to the paramount authority of the federal and state governments in their exercise of the public right of navigation. The cases of *State* v. *Cleveland & Pittsburgh Rd.* Co. (1916), 94 Ohio St. 61, and *State, ex rel. Squire, Supt. of Banks,* v. *City of Cleveland* (1948), 150 Ohio St. 303, hold that such private rights exist in the littoral proprietor of land adjacent to Lake Erie, although the title to such subaqueous soil is held by the state in trust. If the littoral proprietor, who holds no title to the subaqueous soil, has such rights, then these cases are, a fortiori, authority that a riparian owner, who does hold a title, has similar rights. However, no such wharves, piers or other structures in the stream bed owned by relator have been destroyed or in any way physically touched. Thus, there is no "taking" in that manner.

Can the channel dredged by relator in 1937 be considered as a private structure? Relator obtained a federal permit and

dredged this channel from the main channel to what was then his leased premises and wharf. The bridge passes over that channel. At that point, and in fact for several thousand feet in either direction, the channel is not within the stream bed now owned by relator. While relator's briefs refer to it as a "private" channel and as the "Anderson" channel, the only facts before us show merely the dredging under a federal permit. At one time it would not be unusual for a person or a group of persons to improve a public way in front of another's property for his or their own convenience. It probably is still done in rural areas on occasion. With respect to navigable waters, it is pointed out in 2 Nichols, Eminent Domain, Section 5.79, that many *public* rights are exercised by private persons for their own benefit. As an aid to navigation, private persons may be permitted to dredge sand and do so regardless of the consent of riparian owners. The mere fact of improving a public way or navigable stream obviously does not create any private right to its use. Nor would the fact that the government granted a permit to carry on such activity as opposed to doing so itself operate to change or increase private rights. The fact that relator dredged the channel does not show that he acquired any interest in the subaqueous soil which belongs to others, nor that he does or could acquire an incorporeal right of user different from that of the public. On the record, we see nothing which makes this channel any different from one so dredged by the federal government or under its authority. Thus, at present we assume that the channel as such is merely an improvement of stream navigation accomplished by virtue of public right and not a property interest of relator.

Without intending any expression of opinion, if relator should amend to allege other facts sufficient to raise the issue, we will then consider whether this channel could constitute a private structure in aid of navigation which could be subject to a taking as the result of a *nonnavigational* use within the stream.

On the other hand, we think it clear that relator as a riparian owner on a navigable stream does have a "right of access," and that this right is a private incorporeal right appurtenant to the land. In *State* v. *Cleveland & Pittsburgh Rd. Co.* (1916), 94 Ohio St. 61, paragraph five of the syllabus states:

"The littoral owner is entitled to access to navigable water

on the front of which his land lies, and, subject to regulation and control by the federal and state governments, has, for purposes of navigation, the right to wharf out to navigable water."

As previously noted, the *State* v. *Cleveland & Pittsburgh Rd. Co.* case has been adopted and reaffirmed in *State, ex rel. Squire, Supt. of Banks,* v. *City of Cleveland* (1948), 150 Ohio St. 303. In both cases the court's discussion was primarily in terms of specific structures such as landfills, wharves, piers, etc. Yet we think these improvements are in actuality only a means of asserting and effectuating the incorporeal right of access, and that the court in those cases so recognized. It is true that both cases deal with littoral rights in the waters of Lake Erie. The distinction in the title to subaqueous land may drastically affect these cases as authority on matters in which the title to that soil is pertinent. However, we consider them, a fortiori, authority as to the private rights of an abutting owner to the *use* of navigable waters.

Those two cases carefully distinguish public improvements in aid of navigation and those which are not in aid of navigation. While there might be a broader statutory right, the *constitutional* right to compensation under Section 19, Article 1 of our Constitution, applies only to nonnavigational improvements. It is clear in this case that this bridge is a nonnavigational improvement. Its location and its use as part of Route No. 25 make it clear that it is part of an expressway and interstate system for highway traffic and is not related to the use of the water facilities of the Maumee Bay and River.

The issue in this case becomes a very narrow one. It goes to the scope or extent of the riparian right of access with relation to improvements remote from the premises. There has been no physical taking of any structure or land nor has access from the land to the water itself been directly cut off or impaired in any degree. Rather, relator's contention is that his private right has been interfered with by an obstruction to navigation more than a mile downstream. It is a claim of a private right to navigate the whole of the navigable waters. In principle, this contention would apply equally whether the obstruction is one mile away or whether it is 25 miles. Since the claim is not based upon title to the subaqueous soil, it would also be equally applicable to obstructions in the river stream, the bay

or within the Ohio limits of Lake Erie. It would also apply to a highway or railroad bridge, water reservoir or any improvement which operates as an obstruction if the improvement is not one in aid of navigation.

Relator's brief repeatedly refers to a riparian owner's "right of navigation." This phrase is generally used to describe the *public* right or interest in navigable water. The *State* v. *Cleveland & Pittsburgh Rd. Co. case, supra*, and the *Squire case, supra*, recognize the private interest as a "right of access." To avoid confusion, we think the phrase "right of navigation" should be used only to describe the public right.

Relator relies upon two lines of authority. Emphasis is primarily placed on *Hickok* v. *Hine* (1872), 23 Ohio St. 523, and its reaffirmation in *Coleman* v. *Schaeffer* (1955), 163 Ohio St. 202. The second line of authority cited is all highway cases, particularly the "cul-de-sac" cases. While there are some obvious similarities between rights as to highways and those in waterways, there are equally obvious differences both factually and in legal contemplation. In recognition of this, relator's brief depends upon the case of *Hickok* v. *Hine, supra*, to also make the link in its highway analogy to waterways.

In *Hickok*, a riparian owner sought an injunction against the county commissioners to prohibit the construction of a bridge downstream "in such a manner as to obstruct the navigation of the river." Specifically, the plaintiff wanted an order requiring the commissioners to include a draw in the bridge. See 23 Ohio St., at 532. We think the case inapplicable as authority to the issue here, *i. e.*, the extent of the right of access and the existence of a taking. In 2 Nichols, Eminent Domain, Section 5.7911, the author states:

"In examining the cases involving the injury to water rights under color of eminent domain too much care cannot be taken in finding out the precise point involved in each decision. A quasi-public corporation, or even a municipality, has no prerogative right injuriously to affect a stream to a greater extent than a private individual lawfully may do so. Unless the Legislature has given specific authority to the public agency to do the injurious act complained of, the questions arising are not questions of constitutional law or eminent domain at all, but involve merely the law in regard to the relative private

rights of riparian owners. A general power to construct some public improvement will not be construed to authorize interference with private rights unless the work can be done in no other way. *The great majority of cases involving public injury to private water rights in which the injured party has been allowed to recover decide nothing more than that the legislature did not authorize the injury, but they are far too commonly cited as authority for the proposition that the legislature could not constitutionally authorize the injury without compensation.*" (Emphasis added.)

Paragraphs five, six and seven of the syllabus in *Hickok,* as well as the opinion, specifically hold that the county commissioners lacked the statutory authority to erect the bridge as planned. The issuance of an injunction against a public body acting in excess of its authority is certainly not a holding that plaintiff's property rights were taken in violation of the Constitution. Such an unauthorized construction would, as the court held, constitute a public nuisance. The holding was, in effect, that the riparian owner came within the doctrines applicable to a private person's enforcement of a public right or a prevention of a public wrong and he was, therefore, entitled to maintain an action for injunction. However, the equitable doctrines do not rest on constitutional grounds. To prevent intermeddling and harassment, equity developed the rule that a private person generally cannot bring an action against a public nuisance unless his injury is different in kind and degree from that of the general public. However, while interference with a private right will support injunctive relief, it does not follow that the existence of a sufficient interest to obtain such equitable relief is an equivalent to a holding that that interest has been appropriated. As pointed out in *Nichols, supra,* neither the granting of the injunction nor the recovery of damages in such cases is necessarily authority for a taking requiring compensation. It might be recalled that such remedies against the creation of a public nuisance are also available against private individuals as well as public bodies. The fact that a public body was involved does not change the essential analysis of the nature of the case in *Hickok* and transform it into an authority on the constitutional right to compensation. If the bridge as planned here exceeded the authority of the highway director

under the principle of *Hickok,* that case would only indicate that relator might have sufficient interest to obtain injunctive relief to protect the *public* right of navigation.

While relator has not cited either the *Cleveland & Pittsburgh Rd. Co. case* or the *Squire case,* we find nothing in those cases that suggests that the Supreme Court considered whether the private incorporeal right of access extended to such a point as to include the relator's alleged private right of navigation.

There can be no doubt that an obstruction of the public right of navigation may, and perhaps in this case will, operate to inflict great private loss. As stated in 2 Nichols, Eminent Domain, Section 5.79, public improvements frequently create substantial interference with private business or the use of land and result in great financial loss. However, to be compensable, relator here must show that the state has taken a private right which he holds only by virtue of the fact that he is the riparian proprietor. If his right is one shared with other members of the public, then the right is enforceable and protected by the availability of several other remedies. However, there would be no right to compensation.

In 2 Nichols, Eminent Domain, Section 5.792 (1), the author states:

"The right of access to public waters is limited to access to the channel in front of the upland to which the right is appurtenant. Even when passage up and down a watercourse is obstructed unlawfully, the owners of riparian land have no civil action against the wrongdoer and the remedy is by indictment only. Accordingly, *in the states in which the right of access is recognized as superior to the public right* to devote the bed of the stream to the public use, and, a fortiori, in the states in which the public rights are paramount, it seems to be generally conceded that if the legislature authorizes the construction of a dam, or of a bridge with or without a draw, across a stream, upper riparian proprietors who are cut off from navigation to and from the *outside world* have no redress. * * *" (Emphasis added.)

It would seem that relator is claiming not merely a right of access to navigable waters, but a right of access to the outside world. If established as a principle of eminent domain, a bridge in Louisiana would logically subject that state to claims

by all owners on the Mississippi and its many tributaries. While Ohio may establish a more restrictive doctrine than that under the federal law, we see no basis for doing so here. In our opinion, navigation upon public waters is a public right only. In this case, only the right of navigation has been impaired. No right of relator which is held distinctly as a riparian owner, as opposed to the public right used by other owners, shippers, shipping lines, etc., has been appropriated. We think that the interest of a person such as relator in the use of the Maumee for navigation is and can be sufficiently protected by the variety of actions available for the prevention of unreasonable obstructions to navigation. In addition to those available under federal law, especially the right to fully contest the application for a federal permit, several other courses were available under Ohio law for the assertion of the public interest. These include actions by both public authorities and private persons and range from the provisions of the highway statutes for public hearings to various specific remedies available to relator, such as under *Hickok* v. *Hine, supra.*

This court having concluded under the facts here that no private right was appropriated by the state, the writ is denied.

*Writ denied.*

BRYANT, P. J., and TROOP, J., concur.