# PORTAGE COUNTY BOARD OF COMMISSIONERS
## et al., Appellees and Cross–Appellants,

v.

# CITY OF AKRON et al., Third–Party Appellant and Cross–Appellee; City of Ravenna, Third–Party and Appellee.

[Cite as *Portage Cty. Bd. of Commrs. v. Akron*, 156 Ohio App.3d 657, 2004-Ohio-1665.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2001–P–0127.

Decided March 31, 2004.

658

660

662

Jones, Day, Reavis & Pogue, Kevin J. Cogan, Jack A. Van Kley and Jonathan K. Stock, for appellees and cross-appellants.

Virgil E. Arrington Jr., Cuyahoga Falls Law Director, for appellee Cuyahoga Falls.

James R. Silver, Kent Law Director, for appellee city of Kent.

Amie L. Bruggeman, Munroe Falls Law Director, for appellee city of Munroe Falls.

Robert W. Heydorn, Silver Lake Solicitor, for appellee Village of Silver Lake.

Thompson, Hine, L.L.P., Leslie W. Jacobs, Robert F. Ware and Louis L. McMahon, and Max Rothal, Akron City Law Director, and Cheri B. Cunningham, Assistant Akron City Law Director, for defendant/third-party plaintiff-appellant and cross-appellee.

Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, and Robert F. Cathcart; and Frank J. Cimino, Ravenna Law Director, for third-party defendant-appellee.

----

DONALD R. FORD, Presiding Judge.

{¶ 1} The instant appeal emanates from a final judgment of the Portage County Court of Common Pleas. Appellant and cross-appellee, the city of Akron, is seeking the reversal of various determinations made by the trial court regarding its use of the waters contained in part of the Cuyahoga River. Appellees and cross-appellants, the Portage County Board of Commissioners and its three individual members, the city of Cuyahoga Falls, the city of Kent, the city of Munroe Falls, and the village of Silver Lake, are essentially seeking the same relief as to other trial court determinations.[1]

{¶ 2} The basic subject of this appeal concerns the propriety of the parties' respective uses of the waters in the Cuyahoga River. After running throughout Geauga County, Ohio, the river passes into Portage County from the north and flows in a general southwestern direction until it crosses the eastern border of Summit County, Ohio. While it is within Portage County, the river flows past certain properties owned by the city of Cuyahoga Falls, the city of Kent, the city of Munroe Falls, and the village of Silver Lake. Portage County itself does not own any property that abuts the river. However, although it is located in Summit County, appellant owns land in Portage County that contains water diverted from the Cuyahoga River.

{¶ 3} Appellant's use of the river water began circa 1910. At that time, appellant had been experiencing difficulty finding a reliable source of water for its growing population and industries. In 1911, the Ohio General Assembly

----

1. For the sake of brevity, the city of Akron will be referred to as "appellant" throughout this opinion. For the same reason, the eight appellees and cross-appellants will be referred to solely as "appellees," unless it is necessary to refer to one of those entities by their proper name. Finally, the city of Ravenna, which was a third-party defendant before the trial court and is not a party to the cross-appeal before this court, will be referenced solely by its proper name.

passed a statute that purported to give appellant, in perpetuity, the state's entire legal interest in the waters of the river. The statute also gave appellant the state's eminent domain authority to appropriate land for the purpose of creating a water system for appellant's inhabitants.

{¶ 4} Using the foregoing authority, appellant obtained a significant track of land located in Portage County, north of the city of Kent. At this site, appellant built a dam across the Cuyahoga River and thereby created a large reservoir of water which subsequently became known as Lake Rockwell. This reservoir would soon become the main source for the drinking water that appellant has continued to supply for its citizens over the ensuing decades. Water from Lake Rockwell has also been used by appellant for fire protection and other internal municipal uses. As of the late 1990s, appellant was pumping an average of 42 million gallons of water per day from Lake Rockwell.

{¶ 5} In addition to the property for the primary reservoir for its water system, appellant also obtained other tracts of land in Portage and Geauga counties. Some of the tracts were used through the years to construct three other reservoirs. Appellant further obtained a group of water wells in Geauga County that were capable of producing 22 million gallons of water per day. Finally, in the years immediately after the passage of the 1911 statute, appellant pursued a policy of purchasing the riparian rights of Portage County property owners whose land abutted the Cuyahoga River downstream from Lake Rockwell.

{¶ 6} Even after the dam for Lake Rockwell had been completed, there was still a continuing flow of water in the river downstream from the dam toward the city of Kent. This flow primarily consisted of water that appellant purposely released from the reservoir and water that would naturally seep into the river from the surrounding ground. For many years following the completion of the dam, the amount of water in the downstream portion of the river, known as the "middle" Cuyahoga River, was sufficient to enable appellees to continue to use the river in the same manner as they had before.

{¶ 7} However, during the last two decades of the twentieth century, the population of Portage County started to grow at a quicker pace. As a result, appellees' respective wastewater treatment plants began to expel more treated sewage into the river. In the late 1990's, appellees were informed by a state environmental agency that they would be required to lower the percentage of pollutants in their treated sewage because there was not enough water in the Cuyahoga River to sufficiently dilute the pollutants. In addition, during this same time period, appellant had entered into agreements to sell their water to other communities in Summit County. Thus, a dispute developed about whether

appellant was legally obligated to release more water from Lake Rockwell into the river.

{¶ 8} In April 1998, appellees initiated the instant case by filing a seven-count complaint against appellant. As the basic factual basis for the complaint, appellees alleged that appellant's use of the river water in Lake Rockwell violated their rights as owners of downstream land. Specifically, they alleged that, by hoarding the water, appellant was harming the aquatic life in the river and the recreational use of the river. In their second claim, appellees sought a declaratory judgment as to the rights of the parties under the 1911 statute. They also asserted claims sounding in unreasonable use of the water, public nuisance, private nuisance, and negligence. In addition, they claimed that appellant was improperly denying the public access to Lake Rockwell.

{¶ 9} After the action was pending for nearly six months, the parties agreed that the following entities would be added as defendants: (1) the Copley–Akron Joint Economic Development District; (2) the Coventry–Akron Joint Economic Development District; and (3) the Springfield–Akron Joint Economic Development District. These additional defendants had agreements with appellant to purchase water for drinking and sewer purposes. These entities asserted counterclaims against appellees.

{¶ 10} Appellant's first response to the complaint was to move for a change of venue to Cuyahoga County. After the trial court overruled this motion, appellant submitted its answer to the complaint. In addition to asserting 28 defenses, appellant raised 11 counterclaims against appellees, essentially asserting that appellees had tried to interfere with appellant's right to use the water in the river. Appellant also filed a third-party complaint against the city of Ravenna, raising six more claims for relief. In turn, the city of Ravenna answered the third-party complaint and asserted multiple counterclaims against appellant.

{¶ 11} Once the pleading stage of the action had culminated, appellant moved for judgment on the pleadings in relation to appellees' claim for public access to Lake Rockwell. Appellant argued that appellees did not have standing to contest their rule concerning access to the lake. The trial court granted this motion in part, holding that only the Portage County Board of Commissioners could challenge the access rule.

{¶ 12} The parties then filed competing motions for summary judgment as to the proper interpretation of the 1911 statute. After reviewing the respective evidential materials, the trial court granted judgment in favor of appellees on three issues. First, the court held that appellant did not have the right under the statute to sell any water to anyone outside its territorial limits. Second, the court held that appellant had not obtained any riparian rights under the statute as to

any land on the "middle" Cuyahoga River. Third, the court concluded that the statute had not granted appellant unlimited use of the river water.

{¶ 13} In addition to the foregoing, the parties submitted other summary judgment motions pertaining to many of the pending claims and counterclaims. As between appellant and appellees, the trial court granted summary judgment in favor of appellees in regard to appellant's counterclaims of conversion, trespass, civil conspiracy, and tortuous interference with contractual relations. The trial court also granted summary judgment in favor of appellant as to appellees' claims of negligence and for monetary damages. However, the trial court overruled appellees' motion for summary judgment in relation to appellant's counterclaim of unreasonable use of the river water and as to their own claims of improper diversion of water and the need for a water diversion permit. Similarly, the court did not grant appellant's motion for summary judgment as to appellees' claims of unreasonable use, public nuisance, private nuisance, public access to Lake Rockwell, and the need for a water diversion permit. Finally, the trial court overruled appellant's motion for summary judgment on the issue of whether it had appropriated all of the water rights downstream from Lake Rockwell.

{¶ 14} As to those claims between appellant and the city of Ravenna, the trial court granted summary judgment in favor of Ravenna in regard to appellant's third-party claims of conversion, trespass, nuisance, negligence, and contribution. Furthermore, the court granted Ravenna's motion for summary judgment on the issue of whether the 1911 statute had given appellant any water rights to certain tributaries of the Cuyahoga River. Regarding Ravenna's counterclaims, the trial court awarded summary judgment in favor of appellant as to the claims of unreasonable use, negligence, nuisance, and the need for a water diversion permit.

{¶ 15} In February 2001, a 16–day bench trial was held on the remaining claims. In light of the evidence presented, the trial court entered judgment in favor of appellant as to each of appellees' claims concerning the reasonableness of appellant's use of the river water. Similarly, the court also entered judgment in favor of appellees as to each of appellant's counterclaims on the use issue. The only claim for which the trial court gave affirmative relief was the "public access" claim. As to that claim, the court ordered appellant to allow the public to use non-motorized boats on Lake Rockwell. Finally, the court declared valid appellant's agreements to sell water to the three joint economic development districts.

{¶ 16} In appealing from both the foregoing judgment and the summary judgment decision to this court, appellant has raised 25 assignments of error for our consideration. In addition, appellees have asserted six assignments of error in their cross-appeal.

## I

{¶ 17} The first seven assignments in the instant appeal pertain to the trial court's summary judgment decision in favor of appellees as to the extent of appellant's right to the waters of the Cuyahoga River under the 1911 statute.

### ASSIGNMENT OF ERROR NUMBER 1

{¶ 18} "The court erred in denying Akron's motion for summary judgment declaring its rights under the 1911 statute."

{¶ 19} Under its first assignment, appellant asserts that the trial court should have granted summary judgment in its favor on its declaratory judgment claim because the court did not properly interpret the portion of the statute dealing with its right to use the river water for municipal purposes. Specifically, appellant contends that the trial court failed to interpret the statute in light of other contemporary statutes dealing with a municipality's eminent domain power.

{¶ 20} As was noted previously, the statute at issue, 102 Ohio Laws 175, was passed by the Ohio General Assembly in May 1911. The first section of the statute dealt with the grant of authority to divert and use the river water. This section stated in part:

{¶ 21} "That there is hereby granted to the city of Akron, in the county of Summit, and state of Ohio, the right to divert and use forever for the purpose of supplying water to said city of Akron and the inhabitants thereof, the Tuscarawas river, the big Cuyahoga and little Cuyahoga rivers, and the tributaries thereto, now wholly or partly owned or controlled by the state and used for the purpose of supplying water to the northern division of the Ohio canal * * *."

{¶ 22} In conjunction with the 1911 statute, the then Governor of Ohio, Judson Harmon, issued a deed that granted appellant the right to divert the water of the Cuyahoga River "* * * for the purpose of supplying water to said city of Akron and the inhabitants thereof * * *." The deed further indicated that the grant was applicable to waters of the Cuyahoga River which were "* * * now of wholly or partly owned and controlled by the State of Ohio, and used for the purpose of supplying water to the northern division of the Ohio Canal, together with the right to enter in and upon, for the waterworks purposes as aforesaid * * *."

{¶ 23} In ultimately concluding that the foregoing language from both the statute and the deed did not give appellant an absolute right to use the water from the Cuyahoga River, the trial court first held that the General Assembly had intended to grant appellant only those rights which the state itself had. The trial court then concluded that, under Ohio law, the right to use river water was initially vested in the landowners whose real property abutted the river. Based upon this, the court held that, since there was no indication that in 1911 the state

had owned all of the land abutting the Cuyahoga River in Summit and Portage counties, the state could not have granted total control of the river water to appellant.[2]

{¶ 24} In regard to the first aspect of the trial court's analysis, appellant submits that the court failed to interpret the 1911 statute in the contexts of other existing Ohio laws. Specifically, appellant notes that, as of 1911, there existed a statute which gave a municipality the ability to use its eminent domain power to acquire land and riparian water rights for purposes of a municipal water system. In light of this separate statute, appellant asserts that the General Assembly had to have intended to grant appellant a greater right under the 1911 statute than what the city could obtain using its eminent domain power.

{¶ 25} At the outset of our analysis, this court would note that, under the primary rule of statutory interpretation, a court must apply a statute as it is written when the meaning of the provision is unambiguous and definite. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463. In other words, an unambiguous statute has to be applied in a manner consistent with the plain meaning of the statutory language, and a court does not have the option of simply ignoring or adding words. *State ex rel. Burrows v. Indus. Comm. of Ohio* (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519. See, also, *Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 347, 626 N.E.2d 939. Furthermore, the Supreme Court of Ohio has indicated that the purpose of statutory construction is to discern the actual meaning of the statute, as compared with what the Ohio General Assembly might have intended. *First Natl. Bank of Wilmington v. Kosydar* (1976), 45 Ohio St.2d 101, 106, 74 O.O.2d 206, 341 N.E.2d 579.

{¶ 26} After reviewing the 1911 statute in light of the foregoing general rules, this court concludes that the statute is worded in such a way that its meaning is plain and unambiguous. Specifically, we would emphasize that, in making the grant of the right to divert and use the river water, the General Assembly referred to the fact that such water had to have been wholly or partly owned by the state and been used in the operation of the Ohio Canal. Therefore, it is apparent that the reference to the state's prior ownership and use was intended as a qualification on the grant to appellant.

---

2. As will be discussed under the fourth assignment, the trial court erred in focusing the last part of its analysis upon the fact that appellant had not acquired all of the land abutting the river. This court would agree that, instead of the abutting land, the trial court should have focused upon whether appellant had purchased all of the riparian rights associated with the abutting land. Nevertheless, since there was another basis upon which the trial court could have granted summary judgment in favor of appellees on this issue, this particular error was harmless.

{¶ 27} If, as appellant suggests, the legislature intended to give appellant an absolute right to all of the river water, there simply would have been no need to add the phrase concerning the state's prior ownership and the use of the water in the canal. Instead, the legislature could have stated that it was granting the right to use the water without qualification. Accordingly, in order for this court to hold that an absolute right was granted, we would have to ignore the reference to prior ownership and use.

{¶ 28} Notwithstanding the fact that the grant in the 1911 statute was qualified, it still gave appellant a considerable right which it could not have acquired in any other fashion, i.e., the statute allowed appellant to assume the state's right to use the river water without having to pay any compensation. To this extent, this court rejects appellant's contention that the foregoing interpretation somehow conflicts with the existing eminent domain statute. Even with the qualification, the grant in the 1911 statute still gave a right which it could not obtain through the power of eminent domain. Hence, the foregoing interpretation does not render the 1911 statute meaningless in any respect.

{¶ 29} Since the unambiguous language of the 1911 statute gave appellant only the specific water rights which the state previously had, the trial court then had to determine what the extent of the state's rights in the Cuyahoga River was as of 1911. In attempting to answer this question, the trial court reviewed relevant Supreme Court precedent concerning the ownership of a river bed and the water flowing through it. At the end of this review, the trial court held that the ownership of riparian water rights was initially vested in the landowners whose real property abutted the river. Our review of those same cases supports the conclusion that the trial court's analysis was correct.

{¶ 30} The Ohio Supreme Court first addressed the issue of the "ownership" of a river in *Gavit v. Chambers* (1828), 3 Ohio 495, 1828 WL 29. The specific question before the *Gavit* court concerned whether the federal government had retained any property interest in Ohio's navigable rivers after the passage of the Northwest Ordinance of 1787. After fully considering the practical difficulties which might ensue if the federal government still owned the rivers, the court adopted the common-law rule as to the ownership of rivers. Under that rule, ownership of the river bed lies with the person who owns the adjacent land. The *Gavit* court also concluded that the federal government retained only an easement of navigation on the rivers.

{¶ 31} In *June v. Purcell* (1881), 36 Ohio St. 396, 1881 WL 11, the Supreme Court stated that the *Gavit* holding had become a settled rule of property in Ohio. The *June* court then paraphrased the rule as follows: "[I]n this state the owners of land situated on the banks of navigable streams running through the state, are also owners of the beds of the rivers to the middle of the stream * * *.

* * * The rule is in accordance with the doctrine of the common law, which regards all non-tidal streams, that are navigable in fact, as mere highways; and the same rule prevails in most of the states." Id. at 405–406.

{¶ 32} Although *Gavit* and *June* concerned only the ownership of the land under a river, the Supreme Court extended the application of the *Gavit* rule to the water itself. In *Walker v. Bd. of Pub. Works* (1847), 16 Ohio 540, 1847 WL 74, the Supreme Court stated that "[t]he proprietor of the lands upon its banks may use the waters, of the river in any way not inconsistent with the public easement, or of private rights, and neither the state nor any individual has the right to divert the water to his injury." Id. at 544. Furthermore, in *Mansfield v. Balliett* (1902), 65 Ohio St. 451, 63 N.E. 86, the Supreme Court recognized that a landowner's right to the flowing water in an abutting river, i.e., riparian water rights, is a property interest which is entitled to the identical constitutional protection accorded a property interest in land. The *Balliett* court also indicated that riparian rights arise solely as a result of the location of the land owned by the proprietor.

{¶ 33} Over the past century, the relative importance of riparian water rights has decreased considerably; accordingly, the Ohio Supreme Court has not had any reason to readdress the issue of the origin of such rights. Consequently, there is no reason to doubt that the foregoing four cases are still binding precedent on this issue. Under these cases, the state of Ohio did not obtain any property right in the waters of the Cuyahoga River when our state was formed in 1803; instead, the riparian rights were invested in the private individual who originally acquired title to the abutting land. In turn, this means that the state of Ohio can be the holder of the riparian rights only when it has properly acquired the rights from the landowners.

{¶ 34} Before this court, appellant has not challenged the propriety of the trial court's analysis as to the ownership of riparian rights. Rather, appellant has tried to focus our attention on what the General Assembly actually intended to grant to appellant in the 1911 statute. However, even if the Ohio legislature did intend to give appellant an absolute right to the water of the Cuyahoga River, it did not have the authority to grant what it did not own. This court would also emphasize that, in interpreting the 1911 statute, we cannot enforce the alleged intent of the legislature when the plain language of the statute readily indicates that appellant was to receive only that interest in the water which the state had acquired in operating the Ohio Canal.

{¶ 35} In considering property disputes in which one party bases its interest in land upon the assertion that he or she acquired the interest from the state after the land had been appropriated for use of the Ohio Canal, the Ninth Appellate District has concluded that the party making the assertion has the burden of

showing that the state actually had such an interest. *Halluer v. Emigh* (1992), 81 Ohio App.3d 312, 316, 610 N.E.2d 1092. Although the instant case involves an alleged acquisition of riparian water rights through a grant from the state, the same logic applies. That is, since appellant is the party who is asserting that the state had acquired the riparian rights to the Cuyahoga River as it flows through Portage County prior to the enactment of the 1911 statute, appellant had the ultimate burden of proving the existence of the state's interest.

{¶ 36} Our review of the trial record shows that, in responding to appellees' motion for summary judgment, appellant did not submit any evidential materials demonstrating that the state of Ohio had acquired the riparian rights in question prior to the grant in 1911. Because appellant would have the ultimate burden of proof on this issue at trial, and since appellees had raised the issue of the extent of appellant's riparian interest in their summary judgment motion, appellant's failure to submit any relevant materials meant that no factual dispute was ever raised as to this issue. In fact, the limited relevant materials before the trial court appeared to indicate that, prior to 1911, the state had acquired interests only in regard to the Tuscarawas River.

{¶ 37} Summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

{¶ 38} The Supreme Court stated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, that "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and *identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.* The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)

{¶ 39} Appellate courts review a trial court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. The *Brown* court stated that "* * * we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.

{¶ 40} Pursuant to the foregoing analysis, this court holds that appellees were able to satisfy each prong of the summary judgment standard regarding the issue of the riparian water rights granted to appellant under the 1911 statute. To this extent, appellees were entitled to prevail on their claim for a declaratory judgment.

{¶ 41} In summation, we conclude that the trial court did not err in holding that the 1911 statute and the governor's deed did not grant appellant any riparian water rights in the portion of the Cuyahoga River that flows through Portage County. Therefore, since the trial court properly overruled appellant's summary judgment motion on this issue, the first assignment of error is not well taken.

## ASSIGNMENT OF ERROR NUMBER 2

{¶ 42} "The court erred in relying selectively on words in the governor's form of grant to determine in a summary judgment the right provided to Akron by the 1911 statute."

{¶ 43} Under this assignment, appellant has raised two new issues concerning the trial court's conclusion as to the extent of the rights granted under the 1911 statute. First, appellant contends that the trial court placed too much emphasis on the wording of the governor's deed as compared with the wording of the statute itself. Second, appellant submits that the trial court failed to give proper weight to a report of a local historian regarding the era in which the 1911 statute was enacted.

{¶ 44} As to appellant's first argument, in relation to the qualification of the grant to appellant, this court would note that the relevant language in the statute and in the deed were virtually identical. That is, both documents stated that the grant covered only the water rights that had been wholly or partly owned by the state and had been acquired for purposes of the Ohio Canal. Thus, even though this court would agree that the trial court should have given more emphasis to the wording of the statute, the outcome of the trial court's analysis would have been the same regardless of which document was primarily considered.

{¶ 45} Regarding the second argument, our review of the trial record indicates that, as part of its summary judgment materials, appellant submitted the expert report of Dr. K. Austin Kerr ("Dr. Kerr"), a local historian. In this report, Dr. Kerr provided a summary of the circumstances under which the General Assembly had passed the 1911 statute. Although the facts delineated in the report were never disputed by appellees, we again note that, since the wording of the 1911 statute was plain and unambiguous, it would have been improper for the trial court to look beyond the language of the statute. To this extent, Dr. Kerr's report was not relevant to the issue of the proper interpretation of the 1911 statute.

{¶ 46} Because neither of the foregoing arguments establish a basis for holding that the trial court's summary judgment analysis was flawed, appellant's second assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 3

{¶ 47} "The court erred in summarily declaring that the 1911 statute did not provide any right to Akron in the Cuyahoga River 'upstream from Akron.' "

{¶ 48} As was noted under the first assignment, the 1911 statute gave appellant the right to divert and use the waters from the Cuyahoga River which were "wholly or partly owned or controlled by the state * * *." Under its third assignment, appellant argues that the trial court's interpretation of the statute essentially had the effect of deleting the word "controlled" from the foregoing phrase. Appellant submits that, as the governing entity, the state of Ohio exercises at least "partial control" over all rivers within its boundaries. Based upon this, appellant further suggests that this "partial control" was sufficient under the statute to convey to it the absolute right to use the waters in question.

{¶ 49} As part of our analysis under the first assignment, this court noted that, in regard to the ownership of riparian rights, the Ohio Supreme Court has followed the common-law rule, under which such rights were initially vested in the owners of the land abutting the river. *Gavit*, supra; *June*, supra. The Supreme Court has also held that riparian rights encompass the ability to divert and use the river water. *Balliett*, supra. Finally, pursuant to the foregoing line of cases, the government has retained only an easement of navigation on the rivers, and can obtain only a landowner's riparian rights through an appropriation proceeding or an agreed purchase of such rights.

{¶ 50} In support of its present argument, appellant refers to the Supreme Court's decision in *Cooper v. Williams* (1831), 4 Ohio 253, 1831 WL 1. However, our review of that decision indicates that, contrary to appellant's assertion, the Supreme Court did not recognize a new right or interest under which the state can somehow control the use of river water without acquiring the riparian rights of the landowner. Instead, *Cooper* stands for the basic proposition that, although the state can "take" riparian rights for public use, it must compensate the prior owners of those rights. To this extent, *Cooper* is consistent with *Gavit, June,* and *Balliett,* and does not stand for the proposition that the state can acquire the ability to use river water by merely "controlling" it.

{¶ 51} In light of the fact that the general purpose of the 1911 statute was for the state to convey to appellant all water rights it had obtained as a result of operating the Ohio Canal in the general Akron area, it is apparent that the term "controlled" was included in this statute to refer to any water that the state was incidentally taking into the canal without realizing that it had not acquired the

riparian rights. The evidential materials before the trial court showed that, as of 1911, the state was not diverting into the canal any water from the Cuyahoga River as it flowed through Portage County. As a result, this court concludes that the term "controlled" simply was inapplicable to the water at issue in this case.

{¶ 52} Since appellant has failed to establish any prejudicial flaw in the analysis of the trial court, its third assignment of error is not well taken.

## ASSIGNMENT OF ERROR NUMBER 4

{¶ 53} "The court erred in premising its summary judgment declaration of rights solely on an interpretation of ownership interests in land."

{¶ 54} Under this assignment, appellant again asserts that the trial court's analysis of the 1911 statute was flawed because it did not properly distinguish between an interest in land and riparian rights. Specifically, appellant argues that the trial court improperly concluded that riparian rights can never be conveyed separately from the land upon which they are based. In support of this argument, appellant notes that, at the end of its summary judgment decision, the trial court made the following statement:

{¶ 55} "* * * The State of Ohio did not own all of the land adjoining the Cuyahoga River in Portage, Geauga, and Summit Counties. Therefore, the Cuyahoga River was and still is owned by the riparian owners in each parcel of land the river flows through in Portage, Geauga and Summit Counties, subject to an easement of navigation * * *."

{¶ 56} The first sentence of the foregoing quote implies that, in order to obtain the riparian rights associated with a specific tract of land, the state must purchase the land itself. This implication is inconsistent with the case law of this state. As will be fully discussed under the eighth assignment of error, the Supreme Court of Ohio has held that riparian rights constitute a distinct property interest that can be appropriated or conveyed separately from the land. Thus, the trial court should have stated in the foregoing quote that the riparian rights to the "middle" Cuyahoga River are still owned by the abutting landowners because the state had never appropriated the riparian rights or the underlying land.

{¶ 57} However, the foregoing flaw in the trial court's analysis was not prejudicial to appellant. As we noted in our discussion under the first assignment, appellant failed to present any evidential materials establishing that the state of Ohio had appropriated, or otherwise acquired, the riparian rights to the "middle" Cuyahoga River. Accordingly, even though the trial court did not follow the proper analysis, it did ultimately reach the correct decision on this issue. Furthermore, since an appellate court's review of a summary judgment exercise is de novo, we can substitute the proper analysis for the trial court's

analysis on this specific point and then affirm on that basis. See *Schriner v. Valv–Trol Co.*, 6th Dist. No. WM–02–008, 2003-Ohio-2530, 2003 WL 21126818; *Home Ins. Co. of Illinois v. OM Group, Inc.*, 1st Dist. No. C–020643, 2003-Ohio-3666, 2003 WL 21569154.

{¶ 58} Because appellant has failed to establish that the flaw in the trial court's analysis affected the propriety of its ultimate decision, its fourth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 5

{¶ 59} "The court erred in summarily declaring that Akron's right to divert and use the Cuyahoga River is limited as to volume."

{¶ 60} This assignment of error again sets forth a challenge to the trial court's interpretation of the 1911 statute as to the amount of water appellant is allowed to take from the Cuyahoga River. Appellant notes that, although the 1911 statute placed a specific limit on the volume of water it could take from the Tuscarawas River, the statute did not place such a restriction upon its use of the Cuyahoga River. Based on this, appellant argues the trial court should have held that the General Assembly intended to grant it the right to use any amount, if not all, of the water in the Cuyahoga River.

{¶ 61} The language cited by appellant in support of this argument appears in the second section of the statute. That section specifically provided that appellant's use or diversion of the Tuscarawas River could not diminish the amount of water flow in that river during certain months of each year. The second section further stated that appellant could never take more than 15 million gallons per day from that river.

{¶ 62} In light of the foregoing provisions, this court would agree that the General Assembly intended to give appellant greater access to the Tuscarawas River as compared with the Cuyahoga River. For whatever reason, the legislature did not perceive a need to protect the flow of the Cuyahoga River to the same extent as the Tuscarawas River. Nevertheless, even though the state of Ohio did not designate how much water appellant could take from the Cuyahoga River, it still could grant to appellant only whatever right it had in such water. Again, we would note that appellant failed to demonstrate that the state had acquired the riparian rights to the "middle" Cuyahoga River prior to the passage of the 1911 statute. Thus, as the state of Ohio never had the right to use all waters in the Cuyahoga River, it could not grant that right to appellant.

{¶ 63} Pursuant to the foregoing analysis, appellant's fifth assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER 6

{¶ 64} "The court erred in summarily declaring that the rights granted to Akron under the 1911 statute were limited to use of water inside Akron's borders."

{¶ 65} Under its sixth assignment, appellant contests another aspect of the trial court's summary judgment decision in regard to the 1911 statute. Specifically, appellant asserts that the trial court erred in concluding that, under the pertinent statutory language, the city was prohibited from selling its water to any person who does not live within its territorial limits. Appellant contends that the trial court again interpreted the pertinent language so narrowly that the city cannot use its water for legitimate municipal purposes.

{¶ 66} As was noted above, the 1911 statute expressly stated that the water from the Cuyahoga River had to be used "for the purpose of supplying water to said city of Akron and the inhabitants * * *." In now asserting that this language did not place any restriction upon its use of the water, appellant argues that, under the trial court's interpretation, there is no distinction between the "City of Akron" and the "inhabitants" of the municipality, i.e., according to appellant, the trial court held that the city could only use the water in the same manner that it would be used by any other city inhabitant. Based upon this, appellant submits that the trial court's interpretation would forbid it from providing water service to any local business or using the water for fire protection and street cleaning.

{¶ 67} Upon reviewing the pertinent language in the context of the entire statute, this court concludes that the trial court properly interpreted the 1911 statute as to the issue of appellant's authority to sell the water outside its jurisdiction. First, appellant has mischaracterized the nature of the trial court's holding on this point. A review of the summary judgment decision readily shows that the trial court held only that the 1911 statute did not permit appellant to sell the water from the Cuyahoga River to "people" who were not inhabitants of the city. The court never held that the statute placed any restriction upon appellant's ability to use the water for normal municipal functions; instead, the clear import of the summary judgment decision was that the statute required that the use of the water occur only within the city's territorial limits. To this extent, this court rejects appellant's contention that the trial court's interpretation essentially erased any distinction between the "City of Akron" and its inhabitants.

{¶ 68} Second, a review of the entire 1911 statute indicates that it did not contain any wording that would support the conclusion that the Ohio General Assembly intended for appellant to have the authority to use the water for any purpose it wanted. Rather, the statute refers only to supplying water for the city

and its inhabitants. In the absence of any other qualifying language, the foregoing reference could be interpreted to mean only that the 1911 statute had not given appellant the ability to sell or supply water to any individual who resided outside the city's jurisdiction.

{¶ 69} As an aside, we further note that the trial court's holding on this aspect of the 1911 statute was subsequently rendered moot as a result of other legal conclusions the court made. As part of its final judgment in the case, the trial court found that appellant had properly appropriated certain property in Portage County that was directly adjacent to the Cuyahoga River. In light of this finding, the trial court then concluded that appellant was a "riparian owner" who could take water from the river for its own use and sell it to other persons. In turn, the trial court then upheld as valid the three agreements in which appellant had contracted to sell water to the three joint economic development districts.

{¶ 70} As part of its legal analysis in the final judgment, the trial court did not indicate that its decision as to the validity of the three agreements was specifically based upon its conclusion concerning appellant's right as a riparian owner to sell water taken from the Cuyahoga River. Similarly, the trial court did not expressly state whether, under its subsequent analysis, appellant's right as a riparian owner would be controlling over the restrictive language in the 1911 statute. Notwithstanding the lack of a complete explanation as to the grounds for its decision, it is apparent that the trial court ultimately held that appellant could act as a supplier of water to other townships or municipalities. Therefore, the trial court's summary judgment decision on this particular matter was not prejudicial to appellant.

{¶ 71} Pursuant to the foregoing discussion, this court upholds the trial court's interpretation of the 1911 statute regarding appellant's authority to sell water from the Cuyahoga River to persons who are not city residents. As a result, the sixth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 7

{¶ 72} "The court erred in granting Ravenna's motion for summary judgment regarding the 1911 statute."

{¶ 73} After the trial court had rendered summary judgment in favor of appellees as to appellant's rights under the 1911 statute, the city of Ravenna moved for summary judgment regarding the second count of the third-party complaint, under which appellant sought a declaration that it was entitled under the statute to use all water in Lake Hodgson, Breakneck Creek, Congress Lake Outlet, and the P & O South Feeder Canal. After appellant responded to this summary judgment motion, the trial court rendered a separate judgment in which it expressly concluded that the 1911 statute had not granted appellant any

specific right to the water in these four bodies. Under the instant assignment of error, appellant again contends that the trial court's interpretation of the pertinent statutory language was incorrect. Specifically, appellant argues that it is entitled to divert this particular water because the evidential materials demonstrated that the four bodies in question were all tributaries of the Cuyahoga River.

{¶ 74} As was discussed under the first assignment, this court concludes that the 1911 statute gave appellant only any water right which the state of Ohio had properly obtained prior to the enactment of the statute. Therefore, in order to establish its right to the waters in Lake Hodgson, Breakneck Creek, Congress Lake Outlet, and the P & O South Feeder Canal, appellant had to submit to the trial court evidence showing the extent of the state's rights to the water. Again, our review of the trial record indicates that appellant did not submit any evidential materials with its responses to Ravenna's motion. Thus, since the trial court did not err in granting summary judgment in favor of the city of Ravenna regarding appellant's rights under the 1911 statute, the seventh assignment of error is not well taken.

## ASSIGNMENT OF ERROR NUMBER 8

{¶ 75} "The court erred in holding that riparian rights cannot be severed from land."

{¶ 76} As was noted in the statement of facts, following the passage of the 1911 statute, appellant took steps to acquire the riparian rights of certain landowners whose property abutted the "middle" Cuyahoga River downstream from the dam at Lake Rockwell. In light of these acquisitions, appellant essentially maintained before the trial court that it had purchased the rights to use all water in the river, regardless of that court's interpretation of the 1911 statute. As to this point, the trial court basically concluded that the acquisitions in question had been valid only in relation to the original owners, i.e., the court held that any subsequent purchasers of the properties had not been bound by the transactions regarding the riparian rights. Before this court, appellant states under its eighth assignment of error that these acquisitions were valid as to any subsequent buyer because appellant was invoking its eminent domain power when it made the purchases.

{¶ 77} Under Ohio law, when a natural watercourse passes through a person's land, that individual automatically obtains certain interests in the flowing water, i.e., riparian water rights. *Ritchhart v. Gleason* (1996), 109 Ohio App.3d 652, 656, 672 N.E.2d 1064, fn. 3. As part of these rights, a landowner is entitled to have the water continue to flow across the land in the same quantity, quality, and manner in which it would naturally flow. *Balliett*, 65 Ohio St. at 464, 63 N.E. 86.

Furthermore, such rights give the landowner the ability to use the water for any useful purpose so long as he does not interfere with the riparian rights of any downstream owner. *Ritchhart.*

{¶ 78} In describing the nature of riparian rights, the Supreme Court of Ohio has indicated that the ability to use the water in the river or stream does not constitute an easement or appurtenance. *Balliett,* 65 Ohio St. at 466, 63 N.E. 86. Instead, a landowner's interest in the water is considered a property right that is subject to protection under the Ohio Constitution to the same extent as an interest in land. *Ohio Stock Food Co. v. Gintling* (1926), 22 Ohio App. 82, 85, 153 N.E. 341.

{¶ 79} As part of its analysis, the trial court held that the owner of property abutting a river could sell his riparian water rights separate from the land but that this sale was not binding upon any subsequent purchaser of the land, i.e., the trial court concluded that riparian rights cannot be severed from the underlying property. In support of this holding, the court cited *Akron Canal & Hydraulic Co. v. Fontaine* (1943), 72 Ohio App. 93, 27 O.O. 13, 50 N.E.2d 897. In that case, a company purchased from the landowner the right to use water from a lake which the landowner had created by damming a stream. After the landowner had sold the underlying land to a second company, a dispute arose concerning whether the second company and other adjacent landowners could use the water in the lake for other purposes. In holding that the first company could not restrict the other proposed uses of the water, the *Fontaine* court stated that any right to use the water was "incident" to the land and passed to the new owner as part of the transfer of the interest in the land.

{¶ 80} In support of its basic holding, the *Fontaine* court quoted 67 Corpus Juris, Waters, Section 365:

{¶ 81} " 'The building of a dam on a nonnavigable stream does not change the status of the stream; hence a proprietor doing so does not acquire ownership of the waters stored behind his dam, and his rights thereto must be governed by the rules of law applicable to such rights as he had in the stream before he erected the dam. *The rights he acquires in the water dammed back are usufructuary, and are not severable from the land.'* " (Emphasis added.) Id., 72 Ohio App. at 99–100, 27 O.O. 13, 50 N.E.2d 897.

{¶ 82} Although this court would agree that *Fontaine* stands for the legal proposition for which it was cited by the trial court, we conclude that the *Fontaine* holding cannot be followed because it is logically inconsistent with the well-established principle that riparian water rights can be taken for public use. Beginning with the decision in *Balliett,* the Supreme Court of Ohio has consistently recognized that riparian rights can be subject to the process of eminent

domain, just like a property interest in real estate. See, also, *State ex rel. Andersons v. Masheter* (1964), 1 Ohio St.2d 11, 30 O.O.2d 6, 203 N.E.2d 325.

{¶ 83} In *Balliett,* the issue before the Supreme Court was whether a landowner was entitled to compensation for damage caused to his land as a result of the acts of a municipality in dumping sewage into a creek upstream from the land. In the first portion of its discussion, the Supreme Court expressly recognized that riparian water rights are a property interest which is entitled to constitutional protection. In regard to this first point, the Supreme Court stated that riparian rights "may be the subject of bargain and sale, either with or separate from the land * * *." *Balliett,* 65 Ohio St. at 470, 63 N.E. 86. As part of the second portion of its discussion, the Supreme Court concluded that the damage caused by the municipality constituted a taking of the landowner's riparian water rights. Finally, the *Balliett* court held that the taking of riparian rights had to be treated in the same manner as the taking of an interest in land, in that the landowner had to be compensated by the municipality for the loss.

{¶ 84} In relation to the final point of its opinion, the *Balliett* court indicated that the state and its municipalities had the authority to employ their power of eminent domain to take riparian rights when the water is to be used for a public necessity or utility. Therefore, it follows that, although *Balliett* did not involve a situation in which the municipality sought to appropriate the riparian rights prior to an actual taking, the opinion readily supports the basic proposition that a municipality can appropriate a private landowner's basic rights to use river water flowing through his land.

{¶ 85} In the few opinions subsequent to *Balliett,* in which the Supreme Court has considered the nature of riparian rights, it has never addressed the question of whether the appropriation of such rights under the eminent domain power can be effective against a subsequent purchaser of the underlying land. Moreover, our research on this issue has failed to uncover any decision from a foreign jurisdiction directly on point. However, upon considering the obvious effect the trial court's holding would have on any purchase of riparian rights, we conclude that riparian rights must be severable from the underlying land.

{¶ 86} It is beyond dispute that the eminent domain power is intended to enable the state or a municipality to obtain real property so that it can be employed for a legitimate public purpose, such as a public water works. Obviously, in order for a municipality to efficiently run the water works, it must be able to project the costs of maintaining the utility's operation. If the appropriation of riparian rights was not effective against subsequent purchasers of the underlying land, the municipality would never be able to properly project the future costs of operation because it would never know when it would need more funding in order to be able to use the water. Similarly, if the municipality's continuing use of the

water was subject to periodic appropriation proceedings, its ability to provide continuing service might be compromised.

{¶ 87} Simply stated, one of the essential purposes of the eminent domain power is to give a municipality stability in its appropriation of property for public use. If, as the trial court concluded, riparian water rights can never be severed from the underlying real property, the purpose of stability can never be achieved. To that extent, this court holds that the effect of the appropriation of riparian rights can be no different than the appropriation of real property. Although riparian water rights are inherently different because they are always based upon the underlying land, this difference does not warrant a change in the legal application of the eminent domain power to riparian rights.

{¶ 88} In the instant case, the trial record readily demonstrates that appellant was able to acquire the riparian rights for much of the land located downstream from Lake Rockwell without having to bring appropriation proceedings. However, notwithstanding the differences between the use of the eminent domain power and the outright purchase of riparian rights, the foregoing logic still applies. That is, regardless of the manner in which a governmental entity acquires riparian rights for public use, the stability of the entity's subsequent use would be jeopardized if the acquisition was not effective against subsequent owners of the underlying land. Thus, in light of the prior analysis, we hold that the relevant Supreme Court precedent and public policy considerations support the conclusion that appellant's acquisitions of riparian rights from prior landowners, whether by appropriation or voluntary agreement, are still binding upon appellees.

{¶ 89} Nevertheless, while we disagree with the trial court's holding as to whether riparian rights are severable, we also hold that this error in the trial court's logic did not affect the standing of some of the appellees to maintain the "unreasonable use" claim. As part of its final judgment, the trial court specifically found that four of the eight appellees, including the city of Cuyahoga Falls, the city of Munroe Falls, the city of Kent, and the village of Silver Lake, owned real property abutting the Cuyahoga River that still had their riparian rights in tact. Stated differently, the court found that appellant had not appropriated all riparian rights for the abutting land owned by the four appellees.

{¶ 90} Our review of the trial transcript shows that the trial court's findings in its final judgment on this matter were supported by the evidence presented. For example, as to the city of Cuyahoga Falls, appellees submitted testimony establishing that this party still owned the riparian rights to two parks which abutted the river. The testimony also showed that one of the parks was approximately 500 acres in size and had approximately 1,500 feet of shoreline.

{¶ 91} As to the city of Kent, its claim of riparian rights was predicated solely upon its acquisition of certain property from a private citizen, W.S. Kent. As will be discussed under the 11th assignment, this court concludes that the city of Kent did not obtain any riparian rights under this acquisition because the riparian rights had already been appropriated by appellant. Therefore, since the city of Kent did not have any riparian rights to the Cuyahoga River, it did not have standing to participate in the "unreasonable use" claim. However, this would not affect the ability of the three remaining municipal appellees to go forward on that claim.

{¶ 92} In regard to these findings, appellant asserts that its failure to appropriate these specific riparian rights should not deprive it of the ability to divert all water from the Cuyahoga River because, in comparison to the amount of real property for which it has acquired the riparian rights, the amount to which appellees have retained the rights is insignificant. As to this point, we would note that, even as to the city of Cuyahoga Falls alone, the record demonstrates that its ownership of the abutting land enables its citizens to use the river for several recreational purposes. Under such facts, even if the amount of abutting land appellees own is relatively small, the value of their riparian rights could be substantially affected if the volume of the river water was inappropriately decreased. As a result, this court ultimately holds that the trial court did not err in concluding that the three municipal appellees had standing to maintain their "unreasonable use" claim in this case.

{¶ 93} As appellant has not shown that it was prejudiced due to the trial court's holding on the "severability" issue, its eighth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 9

{¶ 94} "The court erred in excluding relevant evidence based on its erroneous interpretation of Akron's appropriation of all water originating above the Rockwell Dam."

{¶ 95} Under this assignment, appellant maintains that, during the course of the trial, the trial court was unable to perceive the differences between appellant's argument concerning its rights under the 1911 statute and its distinct contention as to its inherent ability to appropriate riparian rights. Appellant further submits that, as a result of this confusion, the trial court did not allow it to present certain testimony pertaining to the meaning of a resolution that the city enacted in light of the 1911 statute.

{¶ 96} The resolution in question was passed by appellant's city council in May 1912. The body of the resolution essentially provided that it was the intention of the city to appropriate all waters of the Cuyahoga River located upstream from the proposed site of Lake Rockwell. The resolution further stated that the city's

actions in appropriating the water would be based upon the authority granted to it under the 1911 statute and its general appropriation power.

{¶ 97} As part of its case-in-chief, appellant presented the testimony of its public utilities manager, David Crandell ("Crandell"). During the course of Crandell's direct testimony, appellant's counsel attempted to ask him questions regarding what property the city had intended to appropriate under the 1912 resolution. After appellees objected to this line of questioning, the trial court sustained the objection on the basis that any issue concerning the authority of appellant to divert the river water under the 1911 statute had already been resolved in its prior summary judgment decision. During the ensuing colloquy between the trial court and the attorneys for both sides, the trial court made a statement that implied that it believed that appellant had appropriated only interests in land following the passage of the 1911 statute.

{¶ 98} Upon reviewing the relevant portion of the trial transcript, we agree that, at that point in the proceedings, the trial court did not acknowledge that appellant was asserting two different arguments as to its ability to divert and use all water in the river: (1) that the ability was granted in the 1911 statute; and (2) that the ability was based upon its general power to appropriate property. In addition, the trial court did not acknowledge that the 1912 resolution related only to the appropriation of the water upstream from Lake Rockwell, as compared with the appropriation of the underlying land for Lake Rockwell and the downstream riparian rights.

{¶ 99} Nevertheless, our review of the trial transcript also indicates that the trial court's lack of acknowledgement of appellant's dual arguments did not result in the wrongful exclusion of evidence. First, the transcript shows that the trial court did not allow Crandell to read into the record the description set forth in the resolution as to the specific interest appellant intended to appropriate. However, just prior to sustaining the objection as to the reading of the description, the trial court did allow Crandell to paraphrase the provisions of the resolution. Hence, appellant was able to present Crandell's testimony as to the meaning of the resolution.

{¶ 100} Second, the record demonstrates that a copy of the 1912 resolution was admitted into evidence as a joint exhibit of the parties. A review of the resolution readily indicates that the wording of the document was not ambiguous or open to interpretation, i.e., the resolution clearly stated that appellant had the intention of appropriating all waters in the river upstream from the dam. Accordingly, even if Crandell's specific description testimony was admissible, it would have been cumulative.

{¶ 101} Because the trial record establishes that appellant was not prejudiced by the trial court's evidential rulings as to Crandell's testimony, appellant's ninth assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 10

{¶ 102} "The court erred in failing to apply eminent domain law to bar plaintiffs' claims for their failures to seek timely remedies."

{¶ 103} In this assignment, appellant maintains that the trial court erred in allowing appellees to go forward on their claims pertaining to their use of the river water contained in Lake Rockwell. Appellant argues that, since its acquisition of the downstream riparian rights was based upon its use of its eminent domain power, those landowners whose riparian rights were not appropriated in the early 1900s were required to file mandamus cases to compel appellant to bring appropriation actions regarding the riparian rights. In light of this, appellant further argues that, because those mandamus actions had to be brought within 21 years after it started to use the river water, any claim as to the alleged taking of the riparian rights of appellees is now barred.

{¶ 104} As to this point, this court would note that appellant's argument is based on the presumption that a mandamus action to compel appropriation is the sole remedy a landowner can pursue when the state or a municipality has engaged in a taking of his property interest. This presumption is simply inconsistent with precedent on this issue. The courts of this state have consistently held that there are several remedies a landowner can employ to stop the taking of property. For example, in *Finamore v. Cann* (1975), 43 Ohio App.2d 134, 72 O.O.2d 328, 334 N.E.2d 518, the court held that when an instrumentality of the state was causing a nuisance upon private property, a landowner could seek either an injunction to stop the nuisance or a writ of mandamus to compel the filing of an appropriation proceeding. The *Finamore* court also stated that the landowner had the right to choose which remedy to pursue.

{¶ 105} Because a claim for unreasonable use of the river water is an alternative means of protecting appellees' riparian water rights, they had the ability under the foregoing principle to pursue such a claim instead of a mandamus claim. Thus, the 21 year statute of limitations to compel an appropriation proceeding is not applicable in this instance. Moreover, this court would note that appellant has raised a separate assignment of error as to the timeliness of appellees' unreasonable-use claim. As a result, since appellant has not raised a viable basis for reversing the trial court's judgment, the tenth assignment of error is not well taken.

## ASSIGNMENT OF ERROR NUMBER 11

{¶ 106} "The court erred in its construction of the W.S. Kent deed."

{¶ 107} This assignment again pertains to the propriety of appellant's attempts to acquire the riparian water rights of the property owners whose land abutted the river downstream from Lake Rockwell. After the passage of the 1911 statute, appellant brought an action to appropriate the riparian rights of W.S. Kent, whose abutting land was located in the city of Kent. This action ultimately resulted in a settlement in which W.S. Kent agreed to quitclaim his riparian rights to appellant for the sum of $75,000. At some point after the execution of the deed, W.S. Kent conveyed the underlying land to the city of Kent.

{¶ 108} Before the trial court, appellant argued that its rights to the water under the deed survived the transfer of title to the land to the city of Kent. The trial court rejected appellant's argument, concluding that the quitclaim deed had not granted appellant an exclusive right to use the water and that the city of Kent had acquired the riparian rights through its acquisition of the land. Before this court, appellant now submits that the trial court misinterpreted the wording of the quitclaim deed.

{¶ 109} A review of the quitclaim deed indicates that the trial court's interpretation was predicated upon two passages. In the first passage, the deed stated that, in exchange for the $75,000, W.S. Kent agreed to "* * * remise, release and forever quit claim unto said City, all his water rights in the Cuyahoga River or connected with the property hereinbefore described, which are, or may be taken, interfered with, or destroyed by said proposed taking, diversion, and permanent appropriation by said City of the waters of the Cuyahoga River for City of Akron Water Works purposes, and no other purposes * * *." The second passage set forth an exception to the foregoing grant: "Expressly reserving, however, to said W.S. Kent his heirs and assigns the right to use and enjoy forever, as heretofore, all the waters of the Cuyahoga River not appropriated or made use of by said City of Akron for its water works purposes * * *."

{¶ 110} In light of the second passage, the trial court concluded the W.S. Kent had not intended to grant appellant all of his riparian rights. Based upon this, the trial court also concluded that appellant had acquired through the quitclaim deed only a "servitude" for use of the river water. Finally, the court held that W.S. Kent had released to appellant only his personal rights to the water, that his release did not run with the land, and that release was not binding upon the city of Kent.

{¶ 111} In relation to the extent of the grant under the deed, we hold that the plain language of the deed did not support the trial court's conclusion that the grant of riparian rights had been limited. The first passage from the

deed clearly provides that W.S. Kent was releasing "all" of his rights in the water and that the appropriation of those rights by appellant was "permanent." Although the second passage stated that W.S. Kent was reserving the right to use and enjoy the river water, this passage also stated that Kent's ability to use the water turned upon whether appellant had appropriated or used all of the water. Since Kent's ability to continue to use the water hinged upon whether any water remained to be used after appellant exercised its rights, it cannot be said that the grant to appellant was limited. Therefore, the trial court's conclusion that appellant acquired only a servitude was not supported by the language of the deed.

{¶ 112} As to the trial court's conclusion that W.S. Kent's release of the right did not run with the underlying land, it is apparent that this conclusion was based on the trial court's determination that riparian rights can never be severed from the underlying land. In light of our discussion under the eighth assignment of error, we hold that this aspect of the trial court's analysis on the W.S. Kent deed was erroneous.

{¶ 113} Upon reviewing the plain language of the W.S. Kent deed in light of the relevant case law concerning riparian rights, this court concludes that the trial court erred in holding that the transfer of riparian rights under the W.S. Kent deed was not binding on the city of Kent. Furthermore, since there is no indication in the record that the city of Kent owned any real property abutting the river which it did not acquire from W.S. Kent, this error was clearly prejudicial to appellant because it would directly affect the city of Kent's standing to be a party to appellees' unreasonable use claim. The trial court should have held that only the city of Cuyahoga Falls, the city of Munroe Falls, and the village of Silver Lake had standing to bring that claim.

{¶ 114} Because the trial court erred in its interpretation of the W.S. Kent deed, the 11th assignment of error in this appeal has merit.

## ASSIGNMENT OF ERROR NUMBER 12

{¶ 115} "The court erred in holding that prescriptive rights are not available against plaintiffs under Ohio law."

{¶ 116} Under the 12th assignment of error, appellant argues that the trial court erred in determining that prescriptive rights are not available against appellees because tort claims may not be substituted for a property law remedy and because appellant acquired the prescriptive easement and title to water rights through adverse possession. Appellees argue that the attempt to seize property through adverse possession is contrary to law and public policy.

{¶ 117} Adverse possession is found when a party proves by clear and convincing evidence exclusive possession which is open, notorious, continuous, and adverse for a period of 21 years. *Grace v. Koch* (1998), 81 Ohio St.3d 577, 579, 692 N.E.2d 1009. In order to determine the 21 year possession, an individual may "tack" to his period of adverse use, the adverse use by previous owners in privity with him. *Lyman v. Ferrari* (1979), 66 Ohio App.2d 72, 76, 20 O.O.3d 138, 419 N.E.2d 1112, citing *Zipf v. Dalgarn* (1926), 114 Ohio St. 291, 296, 151 N.E. 174. Adverse use can be any use that is inconsistent with the rights of the title owner. *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298, 27 OBR 343, 500 N.E.2d 876, citing *Kimball v. Anderson* (1932), 125 Ohio St. 241, 181 N.E. 17. Adverse possession protects not only those who knowingly appropriate others' land but also those who honestly enter and possess land in the belief that it is their own. *Raymond v. Cary* (1989), 63 Ohio App.3d 342, 343, 578 N.E.2d 865. See, also, *Vanasdal,* 27 Ohio App.3d at 299, 27 OBR 343, 500 N.E.2d 876, citing *Yetzer v. Thoman* (1866), 17 Ohio St. 130, 1866 WL 47.

{¶ 118} Acquiring an easement by prescription differs from acquiring title by adverse possession, since exclusivity is not an element that an easement by prescription requires. 2 Ohio Jurisprudence (1998), Adverse Possession, Section 10. "[O]ne party [can] acquire an easement by prescription over a strip of land while, at the same time, another party was acquiring title to the same land by adverse possession." *Jennewine v. Heinig* (Dec. 29, 1995), 2d Dist. No. 95 CA 12, 1995 WL 766005 at * 3, 8.

{¶ 119} Furthermore, we have stated that in general, adverse possession cannot be applied against the state or its political subdivisions. *Wyatt v. Ohio Dept. of Transp.* (1993), 87 Ohio App.3d 1, 5, 621 N.E.2d 822. Based on this court's research, it is our view that the affirmative defense of adverse possession, which appellant raised, cannot be advanced against appellees, since all parties involved are governmental entities. Accordingly, we will not engage in further adverse-possession analysis. Appellant's 12th assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER 13

{¶ 120} "The court erred in ruling that laches did not bar plaintiffs' claims."

{¶ 121} For its 13th assignment of error, appellant urges that the trial court erred in ruling that the affirmative defense of laches did not bar appellees' claims, since appellees did not act on any of them for 86 years. Appellees argue that because the doctrine of laches does not apply to local governments, appellant cannot hide its misconduct behind the doctrine.

{¶ 122} Generally, laches is not a defense that can be maintained by a governmental entity in the absence of a statute to the contrary because to impute laches to the government would be to erroneously impede on the latter's ability to carry out its duty to enforce the law and protect the public interest. *Sutton v. Ohio State Bd. of Pharmacy* (Apr. 30, 2002), 11th Dist. Nos. 2001–T–0030, 2001–T–0031, and 2001–T–0032, 2002 WL 819059, * 3–4, citing *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 146, 555 N.E.2d 630.

{¶ 123} Even assuming that the doctrine of laches is applicable to the instant matter, the facts do not support the defense. A lapse in time alone is insufficient to support laches. Instead, the party asserting the defense has the burden of demonstrating that the delay materially prejudiced it. *State ex rel. Donovan v. Zajac* (1998), 125 Ohio App.3d 245, 251, 708 N.E.2d 254. Here, even though there was a lapse in time, appellant did not prove that the delay prejudiced it in any way. Appellant's 13th assignment of error is not well founded.

## ASSIGNMENT OF ERROR NUMBER 14

{¶ 124} "The court erred in holding that the records of the 1913 lawsuit by Cuyahoga Falls against Akron 'establish nothing' and that Cuyahoga Falls' claims were not barred by the doctrine of res judicata."

{¶ 125} In the 14th assignment of error, appellant contends that the trial court erred in concluding that the records of the 1913 lawsuit between Cuyahoga Falls and Akron "establish nothing" and that appellees' claims were not barred by the doctrine of res judicata. Specifically, appellant claims that the reconstructed lost court record that was supplemented by other admissible evidence of the 1913 lawsuit provided a sufficient basis for the doctrine of res judicata to bar subsequent litigation between the same parties and their privies. On the other hand, appellees posit that the reconstructed record from the 1913 decision does not support the application of the doctrine of res judicata against Cuyahoga Falls.

{¶ 126} The party asserting res judicata must show that there was a prior valid judgment on the merits, that the second action involved the same parties as the first action, that the present action raises claims that were or could have been litigated in the prior action, and that both actions arise out of the same transaction or occurrence. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381–382, 653 N.E.2d 226.

{¶ 127} Here, even though there was a final judgment in the 1913 decision, appellant fails to establish that the claims in this action were or could have been litigated in the 1913 lawsuit. It appears as though the present situation arises from appellant's current use of the water from the Cuyahoga

River and that claim could not have been raised in 1913. It is our position that appellant's use of the water has changed since 1915 and is no longer the same transaction or occurrence, thereby preventing the application of res judicata. Appellant's 14th assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 15

{¶ 128} "The court erred in granting Portage County's motion for summary judgment on Akron's conversion and trespass counterclaims."

{¶ 129} For its 15th assignment of error, appellant alleges that the trial court erred in granting Portage County's motion for summary judgment on appellant's conversion and trespass claims. Portage County alleges that it, not appellant, owns the water at the Shalersville well field.

{¶ 130} Again, to be entitled to summary judgment, the moving party must show that there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw*, 76 Ohio St.3d at 385, 667 N.E.2d 1197. Our review of the granting of summary judgment is de novo. *Brown*, 87 Ohio App.3d at 711, 622 N.E.2d 1153.

{¶ 131} Trespass is defined as the invasion, without authority, of another's private premises whereby damages ensue. *Linley v. DeMoss* (1992), 83 Ohio App.3d 594, 598, 615 N.E.2d 631. Conversion is the wrongful control of personal property belonging to another in denial of the owner's rights. *Rider v. Rider* (Mar. 31, 2000), 11th Dist. No. 98–T–0202, 2000 WL 522349, at * 3.

{¶ 132} In the case sub judice, it appears as though Portage County owns the Shalersville well field. However, appellant argues that it has property rights beyond the water actually flowing in the Cuyahoga River and that Portage County has stolen and removed appellant's control and ability to use its water because Portage County's well field drains water into the Cuyahoga River's flow.

{¶ 133} Appellant cannot bring a claim in trespass as there was no evidence to support its position that it owned the Shalersville well field. See *Kent v. Hermann* (Mar. 8, 1996), 11th Dist. No. 95–P–0042, 1996 WL 210780, at * 2. In addition, appellant cannot assert a claim in conversion because conversion is a tort applicable to personal property. See *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 93, 24 OBR 160, 493 N.E.2d 289. Water in a river or in the ground is not a chattel subject to ownership. *Wood v. Am. Aggregates Corp.* (1990), 67 Ohio App.3d 41, 44, 585 N.E.2d 970. Hence, water is not subject to conversion. Therefore, because there are no genuine

issues of material fact remaining to be litigated, the trial court properly granted Portage County's motion for summary judgment on appellant's conversion and trespass claims. Appellant's 15th assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 16

{¶ 134} "The court erred by failing to bar plaintiffs' tort claims under the statute of limitations."

{¶ 135} In the 16th assignment of error, appellant maintains that the trial court committed error in failing to bar appellees' tort claims under the statute of limitations. Appellant argues that the maximum limitation period was 21 years from the commencement of appellant's method of operation. Appellant claims that the "taking" occurred in 1912, when the Rockwell Dam was constructed. On the other hand, appellees contend that appellant defended several lawsuits and demonstrated that there was no "taking" of the Rockwell Dam. Further, appellees explain that appellant's pattern of retention and release of water from the dam is a continuing tort that tolls the statute of limitations.

{¶ 136} Generally, the statute of limitations begins to run at the time the wrongful act was committed. *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 507, 692 N.E.2d 581. Yet, when the cause of action requires an element of injury, the statute of limitations does not begin to run until the injury takes place. *Kunz v. Buckeye Union Ins. Co.* (1982), 1 Ohio St.3d 79, 81, 1 OBR 117, 437 N.E.2d 1194. Therefore, the limitations period commences when the victim's land and coextensive rights begin to suffer some consequences, not when the dam was constructed here. Accordingly, we agree with appellees' claim that this was a course of ongoing conduct and that the injury did not happen until long after the Rockwell Dam was erected. Appellant's 16th assignment of error is meritless.

## ASSIGNMENT OF ERROR NUMBER 17

{¶ 137} "The court erred in stating that the public has a right to a flow of unpolluted water in the Cuyahoga River."

{¶ 138} For the 17th assignment of error, appellant posits that the trial court erred in stating that the public has a right to have no pollution in the Cuyahoga River and that a riparian owner has no obligation to reduce or eliminate pollutants added by others. Appellees allege that the nuisance and reasonable-use doctrines require upstream riparians to release unpolluted water for users located downstream.

{¶ 139} Riparian rights include the right to utilize the water for all useful purposes so long as other riparian proprietors are not damaged. *Ritchhart*, 109

Ohio App.3d at 656, 672 N.E.2d 1064, fn. 3, citing 92 Ohio Jurisprudence 3d (1989) 494, Water, Section 157.

{¶ 140} "In resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable." *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.* (1980), 62 Ohio St.2d 55, 16 O.O.3d 41, 402 N.E.2d 1196, syllabus.

{¶ 141} Even though *McGlashan* deals with surface water, the rationale equally applies to river water. Further:

{¶ 142} "Where a municipal corporation, without a legal appropriation in which the riparian owner is afforded an opportunity to obtain compensation, causes its sewage to be emptied into a natural water course, thereby creating a nuisance inflicting special and substantial damages on such proprietor, it is liable to an action for the damages so sustained." *Balliett,* 65 Ohio St. at paragraph three of the syllabus.

{¶ 143} An upper riparian owner's use of water is required to be reasonable. Here, appellant's use of the water was not an infringement on downstream riparian rights. It has been determined that appellant did not add any pollutants to the Cuyahoga River and that the pollutants were generated by a third party. Thus, it seems illogical to make a riparian owner responsible to eliminate pollutants it did not add. Furthermore, it is our view that the level of flow in relation to the pollution which was determined by the trial court was appropriate. The public has the right for pollution not to exceed acceptable levels that are not detrimental to health. Appellant has not demonstrated any prejudice nor did it show any injury. Appellant's 17th assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER 18

{¶ 144} "The court erred in granting Ravenna's motion for summary judgment on Akron's third-party claim for nuisance."

{¶ 145} For the 18th assignment of error, appellant asserts that the trial court erred in granting Ravenna's motion for summary judgment on appellant's third-party claim for nuisance.

{¶ 146} As previously mentioned, summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw,* 76 Ohio St.3d at 385, 667 N.E.2d 1197.

{¶ 147} In the case at bar, appellant provided evidential material that demonstrated that Ravenna's facilities were negligently operated and, as a result, produced repeated discharge of raw sewage that caused the problems with the quality of water. However, although the trial court determined that Ravenna negligently operated the facility, the court did not find that there was a nuisance.

{¶ 148} A nuisance is any activity by a person on his own land that produces material annoyance, inconvenience, and discomfort to another person. *O'Neil v. Atwell* (1991), 73 Ohio App.3d 631, 635–636, 598 N.E.2d 110. Hence, it is our position that even though the facility was negligently operated by Ravenna, there was no ongoing discharge that rose to the level of a nuisance by Ravenna with respect to the water. Therefore, the trial court did not err in granting summary judgment to Ravenna on appellant's nuisance claims, as there were no factual questions that needed to be resolved. Hence, appellant's 18th assignment of error is not well founded.

### ASSIGNMENT OF ERROR NUMBER 19

{¶ 149} "The court erred when it considered Portage County's claim for recreational access where Portage County had no standing."

{¶ 150} In its 19th assignment, appellant argues that Portage County did not have standing to seek recreational access to Lake Rockwell. In doing so, appellant first contends that there is no statutory authority that would permit the county to impose public access on the property of another. Instead, appellant submits that counties are permitted to support or provide recreational benefits only at their own expense.

{¶ 151} However, even if Portage County did have statutory authority to pursue their claim, appellant submits that Portage County failed to present evidence of injury to itself or its residents. Appellant maintains that no county commissioner or Portage County resident testified about a desire to use Lake Rockwell for any purpose. In fact, the only witness presented by the county on this issue was a person who did not live in Portage County but who wanted to canoe on the lake.

{¶ 152} Appellant argues that, as a matter of law, Portage County was prohibited from bringing this claim to assert a right of the public because R.C. 305.12, which provides the commissioners with the authority to sue and be sued, does not allow for this type of action. The statutory grant of authority must be strictly construed, and because the county does not have primary responsibility for Lake Rockwell, it cannot bring an action seeking access.

{¶ 153} In response, Portage County argues that it established "personal stake standing" to sue for access to Lake Rockwell. For example, the county claims that it has experienced economic loss, through lost tax revenues and recreational spending, due to its citizen's inability to travel on Lake Rockwell. Moreover, Portage County argues that the closure of Lake Rockwell makes the Cuyahoga River less attractive to boaters, which, in turn, reduces recreation on the river in Portage County. Portage County also contends that it had statutory authority to seek access to Lake Rockwell as the commissioners are entrusted with the county's economic development, a function adversely affected by reduced recreational opportunities.

{¶ 154} Finally, Portage County maintains that appellant has confused the issue of capacity to sue with that of standing. Stated differently, Portage County argues that appellant's argument that the commissioners were not authorized under R.C. 305.12 to bring this suit raises the question of Portage County's ability to sue rather than the question of injury. And because appellant did not raise this issue until filing this appeal, Portage County believes that the issue is waived, as appellant should have asserted lack of capacity in its answer as an affirmative defense.

{¶ 155} Before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue. *Ohio Contractors Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088. Standing is satisfied when a party has a personal stake in the outcome of the controversy. *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178–179, 64 O.O.2d 103, 298 N.E.2d 515.

{¶ 156} Portage County presented evidence that it would continue to suffer economic harm if appellant restricted access to Lake Rockwell. Accordingly, the county had standing to seek access to the lake.

{¶ 157} As for R.C. 305.12, we conclude that it does not prevent county commissioners from bringing the type of action before us. R.C. 305.12 provides:

{¶ 158} "The board of county commissioners may sue and be sued, and plead and be impleaded, in any court. It may bring, maintain, and defend suits involving an injury to any public, state, or county road, bridge, ditch, drain, or watercourse in the county with respect to which the county has the primary

responsibility to keep in proper repair, and for the prevention of injury to them. The board shall demand and receive, by suit or otherwise, any real estate or interest in real estate, legal or equitable, belonging to the county, or any money or other property due the county. The money so recovered shall be paid into the county treasury, and the board shall take the county treasurers receipt for it and file it with the county auditor."

{¶ 159} The first sentence in the statute clearly states that a board of county commissioners may sue and be sued in any court. The remainder of the statute concerns specific types of suits that may be pursued and does not restrict the commissioners to those causes of action listed. If that were true, the ability of county commissioners to protect the interests of those people living in the county would be severely curtailed.

{¶ 160} However, we do not agree with Portage County that appellant has confused the issue of capacity to sue with that of standing. A person's capacity to sue concerns his ability to bring an action for his own benefit or in behalf of another. For example, a person under a guardianship would not be permitted to file a lawsuit, as that would be the guardian's responsibility. In contrast, the question of whether Portage County could bring a claim for access to Lake Rockwell on behalf of its residents concerns standing because if Portage County could not bring that type of action, it would not have a direct interest in the litigation. *Dennis v. Ford Motor Co.* (1997), 121 Ohio App.3d 318, 320, 699 N.E.2d 993, fn. 1 (observing that "[s]tanding concerns the issue of whether a plaintiff can show an injury traceable to the conduct of the defendant[,] * * * [while] '[c]apacity' involves the issue of whether a party may properly sue, either as an entity or on behalf of another"). Appellants nineteenth assignment of error has no merit.

### ASSIGNMENTS OF ERROR NUMBERS 20, 22, 23, AND 24

{¶ 161} "The court erred by shifting from Portage County to Akron the burden to prove the validity of Akron's police power regulation.

{¶ 162} "The court erred by overturning a valid police power action, not demonstrated to be in conflict with general laws, on the basis of a common law cause of action.

{¶ 163} "The court erred by rejecting Akron's regulation of Lake Rockwell as a delegation of the state's sovereign police power.

{¶ 164} "The court erred in granting an injunction based on a misapplication of the common law on navigation."

{¶ 165} Appellant's 20th, 22d, 23d, and 24th assignments of error concern the public's right to access Lake Rockwell for recreational purposes. Essentially,

appellant argues that the trial court improperly placed the burden of justifying its restrictions concerning access to Lake Rockwell on it, and that the court then failed to give proper deference to appellant's ability to regulate and protect its water supply.

{¶ 166} First, appellant contends that a municipality has the power to regulate access to its terminal source of its drinking water, as there are numerous statutes expressly granting municipalities the right to police the sources of their water supplies and to prevent contamination. Furthermore, when reviewing a police power decision, appellant argues that a court does not sit in judgment of the political wisdom of legislative enactments but instead is restricted to determining whether city officials have abused their discretion.

{¶ 167} As a result, appellant argues that the trial court erred when it overturned a valid exercise of appellant's police power. According to appellant, a municipality may adopt and enforce legislation and authorize an administrative regulation, unless the action conflicts with either the federal or state constitution. Therefore, as a matter of law, a public right to navigation cannot usurp appellant's exercise of its sovereign police power.

{¶ 168} Generally speaking, an enactment of a legislative body is presumed to be valid. *Johnson v. BP Chemicals, Inc.* (1999), 85 Ohio St.3d 298, 303, 707 N.E.2d 1107. This presumption may be rebutted if the party challenging the enactment demonstrates "that the ordinance lacks a real or substantial relationship to the public health, safety, morals or general welfare, or that it is unreasonable or arbitrary." *Hilton v. Toledo* (1980), 62 Ohio St.2d 394, 396, 16 O.O.3d 430, 405 N.E.2d 1047. In fact, the Supreme Court of Ohio held in *Dayton v. S.S. Kresge Co.* (1926), 114 Ohio St. 624, 629, 151 N.E. 775:

{¶ 169} "The determination of the question whether or not [an] ordinance was reasonably necessary for the safety of the public is committed in the first instance to the judgment and discretion of the legislative body of the city, and if it acted reasonably and not arbitrarily the authorities should not be restrained by the process of injunction from carrying the provisions of such ordinance into effect. * * *"

{¶ 170} In the case at bar, the trial court found that navigation itself does not create pollution or injury, and that appellant has not shown that boat-borne pollutants or deliberate terrorist attacks are a credible threat to its water source made more likely by navigation. In doing so, the court concluded that the presence of State Route 14 seriously undermined appellant's belief that terrorism is a valid threat that is increased by the use of non-motorized pleasure boats on the river.

{¶ 171} Whether the trial court agreed with appellant's reasoning, there is nothing in the record to suggest that appellant's restriction was a clear and palpable abuse of discretion. While closing Lake Rockwell to boaters may prevent people from using it, Portage County failed to demonstrate that appellant's restriction was not reasonably adapted to the legitimate purpose of protecting appellant's primary water supply. In fact, it appears that the trial court impermissibly placed the burden on appellant to prove the legitimacy of its policy. "This constituted an impermissible shifting of the burden of proof concerning the question of the constitutionality of this enactment." *Hilton*, 62 Ohio St.2d at 396, 16 O.O.3d 430, 405 N.E.2d 1047.

{¶ 172} Appellant also argues that Lake Rockwell is subject to private ownership because it is an inland lake unsuitable for commerce and was created by impounding a section of a stream that had no evidence of prior commercial or recreational use. In 1912, the river at the location of Lake Rockwell was regarded as non-navigable under Ohio law. Because the river was not used for commerce at the time appellant created Lake Rockwell, any right to boat is within its exclusive rights of ownership and includes the right to exclude others from boating on the lake.

{¶ 173} Moreover, appellant contends that in granting Portage County a right of access, the trial court misconstrued two decisions of the Supreme Court of Ohio that altered the judicial definition of navigable waters. Although the trial court found that boating now takes place in parts of the Cuyahoga River above and below the location of Lake Rockwell, the court did not make a similar finding concerning the part of the river where the lake is now located or the lake itself. More important, a mere capacity to boat does not make a body of water open to the public, as the Supreme Court held in a later case that the statutory control granted to political subdivisions is the functional equivalent to the right of private owners on non-navigable streams to exclude the public. *State ex rel. McElroy v. Akron* (1962), 173 Ohio St. 189, 19 O.O.2d 3, 181 N.E.2d 26.

{¶ 174} Even if the trial court's interpretation was correct, it should not have applied the change retroactively, as it would create navigation rights that had been permanently eliminated long before the change. Appellant relied on the law at the time Lake Rockwell was created and expended large sums of money to develop a water system based on the Cuyahoga River.

{¶ 175} Under federal law, the navigability of a body of water is determined by whether such body of water has ever been or is now used as a water highway for interstate commerce. See, e.g., *Miami Valley Conservancy Dist. v. Alexander* (C.A.6, 1982), 692 F.2d 447. *The Daniel Ball* (1870), 10 Wall. 557, 77 U.S. 557, 563, 19 L.Ed. 999, the Supreme Court of the United States defined "navigability" as:

{¶ 176} "[Waterways that] are susceptible of being used, in their ordinary condition, as highways for commerce * * *. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States[.]"

{¶ 177} Clearly, the definition of navigability as provided by federal law is inapplicable to the case at bar. There is no evidence establishing that Lake Rockwell is presently or has ever been used for interstate commerce. Thus, under federal law, Lake Rockwell is non-navigable.

{¶ 178} Ohio law, however, has applied a more expansive definition of navigability to non-interstate inland bodies of water. Under Ohio law, when determining whether a body of water is navigable, consideration may be given to the availability of boating or sailing for recreational purposes. *Coleman v. Schaeffer* (1955), 163 Ohio St. 202, 56 O.O. 214, 126 N.E.2d 444, paragraph one of the syllabus. See, also, *Mentor Harbor Yachting Club v. Mentor Lagoons, Inc.* (1959), 170 Ohio St. 193, 195, 10 O.O.2d 131, 163 N.E.2d 373.

{¶ 179} In the case sub judice, the trial court found that the upper and middle portions of the Cuyahoga River have a capacity for recreational boating. However, the court's emphasis on the availability of recreational boating on the upper and middle portions of the Cuyahoga River fails to establish Lake Rockwell's capacity for recreational purposes. Absent from the record is any evidence that Lake Rockwell has ever been used for recreational boating.

{¶ 180} Furthermore, we agree with appellant that the mere capacity to boat does not, standing alone, make a body of water open to the public. The trial court has placed an inordinate amount of weight on its finding that Lake Rockwell has the capacity for recreational boating. The capacity for recreational boating is merely a factor to consider. Therefore, we conclude that the trial court erred in finding Lake Rockwell to be a navigable inland lake.

{¶ 181} Accordingly, it is axiomatic that a non-navigable inland lake is the subject of private ownership, " 'and where it is so owned, neither the public, nor an owner of adjacent lands, whose title extends only to the margin thereof, [has] a right to boat upon, or take fish from, its waters.' " *Ohio Water Serv. Co. v. Ressler* (1962), 173 Ohio St. 33, 36, 18 O.O.2d 243, 180 N.E.2d 2, quoting *Lembeck v. Nye* (1890), 47 Ohio St. 336, 24 N.E. 686, paragraph one of the syllabus. Because Lake Rockwell is owned privately by appellant and is non-navigable, appellant has the authority to prohibit the recreational use of its waters.

{¶ 182} Based upon the foregoing analysis, the trial court erred in granting the public access to Lake Rockwell for recreational purposes. Appellant's 20th, 22d, 23d, and 24th assignments of error have merit.

## ASSIGNMENT OF ERROR NUMBER 21

{¶ 183} "The court erred by ruling that the doctrine of sovereign immunity does not protect Akron's exercise of delegated sovereignty from Portage County's claim for injunctive relief."

{¶ 184} Under its 21st assignment of error, appellant submits that the trial court erred when it determined that sovereign immunity is not available when the other party is seeking declaratory or injunctive relief. Appellant argues that it would be inconsistent to hold that the allowance of money damages would interfere with the discretionary activity of a political subdivision, while at the same time hold that a court may directly interfere with the exercise of such discretion by enjoining the activity.

{¶ 185} R.C. 2744.02(A)(1) and (B) provides only that a political subdivision is not liable for damages in a civil action. Because injunctions are not mentioned in the statute, Portage County contends that municipalities are not immune from such relief.

{¶ 186} Courts in Ohio have been uniform in the observation that "[b]y its very language and title, [Chapter 2744] applies to tort actions *for damages.*" (Emphasis added.) *Big Springs Golf Club v. Donofrio* (1991), 74 Ohio App.3d 1, 2, 598 N.E.2d 14. It has no application whatsoever in actions for equitable relief. Id. See, also, *McNamara v. Rittman* (1998), 125 Ohio App.3d 33, 47, 707 N.E.2d 967. In other words, R.C. Chapter 2744 does not provide immunity to political subdivisions for claims that are "constitutional in nature," because statutory immunity is "not a proper defense" to claims that do not "sound in tort." As a result, because Portage County's claims were for injunctive and declaratory relief, rather than tort damages, the trial court properly concluded that appellant was not statutorily immune. Appellant's 21st assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER 25

{¶ 187} "The court erred in granting Portage County's claim for recreational access that amounts to a taking without just compensation or due process of law."

{¶ 188} Appellant's 25th assignment of error contends that the trial court's order allowing access to Lake Rockwell constitutes a taking that requires just compensation. Furthermore, appellant argues that Portage County violated its

due process rights by prosecuting a claim without compliance with statutory procedures for taking its property.

{¶ 189} Our holding in appellant's 20th, 22d, 23d, and 24th assignments of error found that the trial court erred in allowing access to Lake Rockwell. As a result, appellant's 25th assignment of error is moot as no damages are present.

## II

{¶ 190} We will now address appellees' assignments of error on cross-appeal.

### ASSIGNMENT OF ERROR NUMBER 1 ON CROSS–APPEAL

{¶ 191} "The trial court erred by failing to find that appellant's use of water is tortious."

{¶ 192} Under the first assignment of error on appellees' cross-appeal, appellees allege that the trial court erred by failing to find that appellant's use of water was tortuous, since appellant's use was unreasonable and a nuisance.

{¶ 193} Based on our resolution of appellant's 17th assignment of error, appellees' first assignment of error on cross-appeal is moot.

### ASSIGNMENTS OF ERROR NUMBERS 2 AND 3 ON CROSS–APPEAL

{¶ 194} "The trial court should have ordered Akron to release at least 10.9 MGD—the minimum flow expected in an extreme drought.

{¶ 195} "The trial court erred by failing to order Akron to release at least 8.5 MGD from the overflow and bypass devices of the dam."

{¶ 196} Under their second and third assignments of error on cross-appeal, appellees argue that they are entitled to a minimum flow of 10.9 MGD during drought conditions and that appellant's operation of the dam on Lake Rockwell impedes this flow. The county maintains that a reduced flow decreases a river's width and depth, which can result in the river becoming unnavigable. This also increases the temperature of the water in the summer and decreases it in the winter, threatening aquatic life.

{¶ 197} Next, appellees submit that a constant flow of 8.5 MGD is essential for the survival of aquatic life and the stabilization of their permit limits. Without at least that level of flow, improvements to the river's health will be ineffective.

{¶ 198} Appellees also believe that there is no evidence to support the trial court's finding that appellant was releasing 8.1 to 9.5 MGD from Lake Rockwell. The trial court determined that Lake Rockwell releases between 3.1 and 4.5 MGD even when the dam's release mechanisms are closed. Testimony showed that this water came from flash board leakage, dike leakage, the water plant discharge,

and seepage into groundwater. Appellees, however, maintain that there is no evidence in the record to support this finding.

{¶ 199} Nevertheless, appellees argue that even if the amount of flow from seepage is correct, the Ohio EPA already accounted for it in establishing the need for an additional release of 8.5 MGD. As a result, the trial court erred when it subtracted 3.1 to 4.5 MGD from the water needed to restore the river.

{¶ 200} Appellant argues that appellees misrepresented the Ohio EPA's position on a suitable minimum flow necessary to restore the Cuyahoga. In fact, there was evidence that the director of the Ohio EPA informed Kent's City Manager that 3.5 MGD release of reasonable quality water from Lake Rockwell gives that river segment the greatest chance of being restored. Because appellant was releasing 8.1 to 9.5 MGD from Lake Rockwell, it more than met the EPA's requirements.

{¶ 201} Appellant's contentions require us to apply a manifest-weight-of-the evidence standard. It is well established that "[j]udgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. In short, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings." *State ex. rel. Celebrezze v. Environmental Enterprises, Inc.* (1990), 53 Ohio St.3d 147, 154, 559 N.E.2d 1335. Thus, in the event that the evidence is reasonably susceptible of more than one interpretation, this court must construe it consistently with the lower court's judgment. *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350.

{¶ 202} After careful examination of the record before us, we agree with the trial court that there was competent, credible evidence in the record to show that appellant, through intentionally releasing water from the dam and seepage, provides enough quality water to comply with the relevant environmental requirements. Thus, appellees' second and third assignments of error on cross-appeal are without merit.

## ASSIGNMENT OF ERROR NUMBER 4 ON CROSS–APPEAL

{¶ 203} "The trial court should have issued an injunction."

{¶ 204} In their fourth assignment of error on cross-appeal, appellees contend that they are entitled to an injunction if they can demonstrate irreparable harm and an inadequate remedy at law. In doing so, appellees maintain that even where the unlawful activity has ceased, an injunction should be issued if reason-

able grounds exist to believe that it will occur again. An injunction should also be issued if there is evidence that the defendant intends to commit a wrong.

{¶ 205} Essentially, appellees argue that regardless of the amount of flow to which it is entitled, it is suffering irreparable harm, as anything less than 10.9 MGD results in the destruction of river habitat and leads to damage to the fishing, boating, and aesthetic value of their parks and recreation areas.

{¶ 206} In rebuttal, appellant argues that appellees are not entitled to an injunction, as the court never ordered appellant to release any additional water from Lake Rockwell.

{¶ 207} In order to succeed on a claim for injunctive relief, the plaintiff must show that irreparable injury has been done or that the threat of injury is immediate or impending. *Crestmont Cleveland Partnership v. Ohio Dept. of Health* (2000), 139 Ohio App.3d 928, 937, 746 N.E.2d 222. We will not disturb the trial court's decision to deny the injunction unless the court abused its discretion. *Rein Constr. Co. v. Trumbull Cty. Bd. of Commrs.* (2000), 138 Ohio App.3d 622, 631, 741 N.E.2d 979.

{¶ 208} As was noted previously, the trial court determined that appellant was releasing enough quality water to satisfy any requirements. Moreover, there is no evidence that appellant intended to limit the current flow. Therefore, because there has been no showing of an irreparable injury or a threat of injury that is immediate or impending, the trial court did not abuse its discretion in denying the county's request for an injunction. Appellees' fourth assignment of error on cross-appeal lacks merit.

## ASSIGNMENT OF ERROR NUMBER 5 ON CROSS–APPEAL

{¶ 209} "The trial court erred when it failed to issue declaratory relief."

{¶ 210} In their fifth assignment of error on cross-appeal, appellees argue that the trial court erred when it refused to grant them declaratory relief concerning the amount of water appellant must release from Lake Rockwell for use by downstream riparian landowners. Appellees submit that given the adversity of the parties' interests in this case, there is a real controversy, and that without judicial intervention the concerns raised in its complaint are reasonably capable of repetition. Moreover, because there is a threat of imminent harm if appellant refuses to release a minimum amount of water, whatever that amount may be, speedy relief is necessary.

{¶ 211} To be successful in an action for declaratory relief, a party must establish "(1) a real controversy between the parties, (2) a justiciable controversy, and (3) a situation where speedy relief is necessary to preserve the rights of the parties." *Haig v. Ohio State Bd. of Edn.* (1992), 62 Ohio St.3d 507,

511, 584 N.E.2d 704. "A real, justiciable controversy is a 'genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Indiana Ins. Co. v. M.D.O. Homes, Inc.* (Dec. 7, 2001), 11th Dist No. 2000–L–167, 2001 WL 1561063, at * 2, quoting *Wagner v. Cleveland* (1988), 62 Ohio App.3d 8, 13, 574 N.E.2d 533. A court, however, will not issue a declaratory judgment if it would act only as an advisory opinion. Id.

{¶ 212} The decision to grant or deny a claim for declaratory judgment will not be reversed absent an abuse of discretion. *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 65 O.O.2d 179, 303 N.E.2d 871, syllabus. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 213} As we discussed earlier, the trial court held that appellant's current use of the Cuyahoga River was not unreasonable. In doing so, the court based its conclusion, at least in part, on the assumption that appellant would continue "to release at least 5.0 MGD of good quality water[.]" The trial court then used the same logic when it held that the county had failed to establish that appellant's operation of Lake Rockwell constituted either a public or private nuisance.

{¶ 214} Although we agree with the trial court that appellant's use of the Cuyahoga River is reasonable, it appears that the court, without specifically making a declaration, found that to maintain such status, appellant was required to release at least 5.0 MGD from Lake Rockwell. If this is true, the trial court should have granted appellees' request for declaratory relief to the extent that appellant is required to release some specified amount of water from the lake. Otherwise, there would be no legal impediment to prevent appellant from decreasing the current amount it discharges. Accordingly, appellees' fifth assignment of error on cross-appeal has merit.

## ASSIGNMENT OF ERROR NUMBER 6 ON CROSS–APPEAL

{¶ 215} "The trial court erred by denying appellees' summary judgment motion and granting Akron's summary judgment motion on count seven of appellees' [complaint]."

{¶ 216} For their sixth assignment of error on cross-appeal, appellees claim that the trial court erred by denying their summary judgment motion and granting Akron's summary judgment motion on count seven of appellees' complaint. Appellees assert that appellant's diversion of water to the Ohio River basin without a diversion permit violates R.C. 1501.32. On the other hand,

appellant avers that appellees lack standing to challenge the Ohio Department of Natural Resources' decision that appellant's proposed provision of water for the Joint Economic Development Districts did not constitute a diversion under the statute.

{¶ 217} As previously mentioned, summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw*, 76 Ohio St.3d at 385, 667 N.E.2d 1197.

{¶ 218} Here, appellees lacked standing to raise this issue, since the Ohio Department of Natural Resources was a necessary party. Appellees also failed to follow the statutory procedures in place for appealing a decision by an administrative agency. Furthermore, it is our view that the trial court did not have subject matter jurisdiction to address the issue, as it was an administrative matter. For diversion permits, if a party feels aggrieved, he or she should address the matter via R.C. 1501.32.

■■■ {¶ 219} In granting summary judgment to appellant on appellees' "diversion" claim, the trial court did not state the specific basis for its decision. However, even if the trial court did not predicate its decision upon the grounds that it lacked subject matter jurisdiction over this particular claim, this court can still affirm the judgment on that basis. As was noted in our discussion under appellant's fourth assignment, since we review a summary judgment exercise de novo, we can substitute the correct legal analysis for the trial court's analysis and then affirm on that basis. Thus, as appellees have failed to show that the trial court committed prejudicial error in granting summary judgment on the "diversion" claim, the sixth assignment on cross-appeal lacks merit.

## III

{¶ 220} Pursuant to the foregoing discussion, appellant's 11th, 20th, 22d, 23d, and 24th assignments of error have merit. In addition, appellees' fifth assignment of error on cross-appeal has merit. All of the remaining assignments of error in both the appeal and cross-appeal are without merit, and the judgment of the trial court is affirmed to that extent.

{¶ 221} As to appellant's 11th assignment of error, the judgment of the trial court is reversed and vacated. Further, this court grants judgment in favor of appellant on the issue of the nature of the rights given to the city of Akron in the

W.S. Kent deed, i.e., the deed granted the city of Akron full riparian rights to the land in question.

{¶ 222} In regard to appellant's 20th, 22d, 23d, and 24th assignments of error, as well as appellees' fifth assignment of error on cross-appeal, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion. Specifically, upon remand, the trial court shall vacate its final judgment of October 9, 2001, and shall issue a new final judgment on this matter. As part of this new judgment, the trial court shall render judgment in favor of appellant as to appellees' claim for public access to Lake Rockwell and shall make a specific declaration concerning the amount of water appellant is required to release from Lake Rockwell into the Cuyahoga River on a daily basis.

Judgment accordingly.

WILLIAM M. O'NEILL and CYNTHIA WESTCOTT RICE, JJ., concur.